Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
        jnassir@faruqilaw.com

Bonner C. Walsh (*pro hac vice*)
**WALSH P.L.L.C.**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
Email: bonner@walshpllc.com

*Attorneys for Plaintiff Christina Rose*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ROSE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HP INC.,<br><br>Defendant. | Case No.: 3:20-cv-02450-VC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. **Violation of California Civil Code § 1750, *et seq.***<br><br>2. **Violation of California Business and Professions Code § 17200, *et seq.***<br><br>3. **Violation of the Song-Beverly Consumer Warranty Act, Cal Civ. Code § 17900, et seq.**<br><br>4. **Fraudulent Concealment**<br><br>5. **Breach of Implied Warranty**<br><br>6. **Common Law Fraud**<br><br>7. **Quasi-Contract/Restitution**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Christina Rose ("Plaintiff"), by and through her counsel, brings this Class Action Complaint against Defendant HP Inc. ("HP" or "Defendant") and alleges upon personal knowledge as to her own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this consumer protection and false advertising class action lawsuit against HP based on its misleading and unfair business practices with respect to the marketing and sale of certain HP color printers (the "Printers").[1]

2.      HP, one of America's leading manufacturers and distributors of printers, offers consumers printers capable of printing in both black and color ink.

3.      However, at the point of sale for the Printers, HP fails to disclose that the Printers use substantial amounts of color ink when printing images and text in black and white (a process known as "underprinting"). This underprinting leads to the printers having a reduced amount of color ink, and therefore, a reduced number of color pages the consumer is able to print.  HP also fails to disclose to consumers that the Printers are designed to cease printing if the Product's color ink is depleted, even if the consumer wants to print in black and white using only black toner or ink.

4.      Consumers purchase the Printers reasonably believing that the Printers would not use color ink when printing purely black and white text or images.  Consumers further reasonably believe that the Printers will be able to print images or text in black and white regardless of whether color ink is available.

5.      Consumers do not know, and have no reason to know, that the Printers were purposefully designed to use color ink even when printing images or text that are purely black and white. Consumers are similarly unaware that the Printers will not be able to print at all if the Printers' color ink has depleted sufficiently. Consumers are unaware of these material facts not only because Defendant fails to disclose them at the point of sale, but they defy common sense. Consumers expect

---

[1] The categories of Printers challenged in this Complaint are more fully defined and listed in Paragraph 23.

**FIRST AMENDED CLASS ACTION COMPLAINT**

a printer to be able to print images and text in black and white when the printer still has sufficient black ink, regardless of the color ink level.

6.     As a result of this underprinting process, consumers expend more on ink than they reasonably expected to, and are forced to buy color ink in order to continue printing, whether they choose to print in color or black and white. Consumers' injuries are only exacerbated due to the relatively more expensive price of color ink compared to black ink.

7.     Had Plaintiff and other consumers known that Defendant designed its Printers to prematurely stop printing when the color ink has been depleted, or that the Printers would consume color ink in amounts sufficient to reduce the life of the color ink cartridges, even when printing images or text in black and white, they would not have purchased the Printers or would have paid significantly less for them. Additionally, consumers would have purchased fewer replacement color ink cartridges but for Defendant's conduct.   Therefore, Plaintiff and consumers have suffered injury in fact as a result of Defendant's deceptive practices.

8.     Plaintiff brings this class action lawsuit on behalf of herself and all others similarly situated.  Plaintiff seeks to represent a California Subclass, a California Consumer Subclass, and a Nationwide Class (defined *infra* in paragraphs 41-44) (collectively referred to as "Classes").

9.     Plaintiff, on behalf of herself and other consumers, is seeking damages, restitution, declaratory and injunctive relief, and all other remedies the court deems appropriate.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of the amount in controversy requirement, exclusive of interests and costs, and some members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of citizenship for Defendant.

11.     This Court has personal and general jurisdiction over Defendant because Defendant is incorporated in California and maintains its principal place of business, or "nerve center" at its headquarters in Palo Alto, California. Further, Defendant has sufficient minimum contacts in

**FIRST AMENDED CLASS ACTION COMPLAINT**

California, or otherwise intentionally did avail itself of the markets within California, through its sale of the Printers in California and to California consumers.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in Palo Alto, California, which is located in this District.

<u>**PARTIES**</u>

**<u>Plaintiff</u>**

13. Plaintiff Christina Rose is a citizen of California, residing in Mill Valley, California. In 2017, Ms. Rose purchased an HP OfficeJet Pro 8630 printer from a Costco in Richmond, California. When purchasing the Printer, Ms. Rose saw that the printer came with both color ink and black ink, and therefore believed that the printer could print in both color and black and white. Nothing at the point of sale on the Printer's packaging indicated to Ms. Rose that she would not be able to print in black and white if the color ink was depleted. Furthermore, nothing on the Printer packaging or advertising indicated that color ink would be used when printing in black and white, or that the printer would be unable to print at all when the color ink was depleted. Therefore, Ms. Rose reasonably believed that she could print in black and white, regardless of the level of color ink.

14. However, unbeknownst to Ms. Rose, when Ms. Rose printed images and text in black and white (for example, musical score sheets), the Printer would also consume color ink. As a result, the Printer's color ink supply was being depleted without Ms. Rose's knowledge. Furthermore, once the color ink in the Printer was depleted, the Printer no longer allowed Ms. Rose to print, even when attempting to print images or text solely in black and white. As a result, since her purchase of the Printer, Ms. Rose has had to purchase multi-pack color ink replacement cartridges on at least three occasions, and a standalone magenta replacement cartridge, in order to continue printing in black ink. Ms. Rose would not have purchased the Printer or would have paid significantly less for it had she known that the Printer would engage in underprinting or that she would not be able to print images or text in black and white unless the color ink was also in supply. Moreover, Ms. Rose would have purchased fewer replacement color ink cartridges but for Defendant's conduct. Therefore, Ms. Rose suffered injury in fact and lost money as a result of Defendant's misleading, unfair, and fraudulent

**FIRST AMENDED CLASS ACTION COMPLAINT**

practices, as described herein.

15. Despite being deceived, Plaintiff wishes to and is likely to continue purchasing and using Defendant's Printers, but only if Defendant's deceptive acts and practices were ceased. Although Plaintiff regularly visit stores and online retailers that carry the Printers and continue to buy ink for her Printer, because Plaintiff was deceived in the past by HP, absent an injunction, she will be unable to rely with confidence on whether the Printers require color ink to print images and text in black and white or whether the Printers are capable of printing black images or text when the color ink is depleted without purchasing the Printers and conducting extensive testing. Therefore, Plaintiff will abstain from purchasing the Printers even though she would like to do so in the future. In addition, members of the proposed classes run the risk of continuing to purchase the Printers, and additional color cartridges for the Printers, under the faulty assumption that printing in black and white does not consume color ink and that the Printers can still print in black and white even when the color ink is depleted. Until HP is enjoined from its deceptive marketing practices, Plaintiff and other consumers will continue to bear this ongoing injury.

**Defendant**

16. Defendant HP Inc. is incorporated in California with its principal place of business in Palo Alto, California. Defendant, directly and/or through its agents, marketed, advertised, and sold the Printers nationwide, including in California, throughout the class period. Defendant has maintained substantial sales in this District. Based on information and belief, Defendant's marketing team, and the decisions made by the team regarding the marketing and packaging of the Printers, operate out of California. Specifically, Defendant maintains its center for "research and development for printers, digital presses, and ink and media" in California.[2] Defendant's focus on printer and ink research and development in California is longstanding, as its "San Diego Printer Operation was created [in 1989] to focus on color inkjet printers."[3]

---

[2] https://www8.hp.com/us/en/hp-information/cwc/sandiego-business-center.html (last visited Jul. 13, 2020)

[3] https://www.hpmuseum.net/divisions.php?did=4 (last visited Jul. 13, 2020).

**FIRST AMENDED CLASS ACTION COMPLAINT**

**FACTUAL ALLEGATIONS**

I. **HP's Printers**

17.      HP is one of America's leading designers, manufacturers and merchants of computer printers, including inkjet and laser printers.

18.      An inkjet printer is a printer that places small droplets of ink, dispensed from an ink cartridge, onto paper to create an image or text.

19.      A laser printer or LaserJet printer is a printer that uses laser beams and toner (rather than ink) in the process of creating text and images. Laser printers generally work as follows: first, a laser beam "draws" the desired text or image on a photoreceptor drum within the printer. At the same time, the drum builds up a pattern of static electrical charges, which allows the drum to then attract a powdered type of ink, called toner. Once the toner has been drawn to the drum, it is then transferred onto a piece of paper and fused onto the paper with heat and pressure, creating the final image or text for the consumer.

20.      Unlike the fixed, upfront, and relatively cheap cost of a printer, the ink and toner cartridges used in printers can ultimately be more costly to consumers because they require periodic replacement. Thus, for printer companies such as HP, a majority of their revenues and profits come from consumers purchasing replacement ink or toner once it is depleted.

21.      HP printers are typically sold with both black and color ink or toner cartridges. While HP printers require one black ink or toner cartridge to function, they require multiple color ink or toner cartridges (*e.g.*, cyan, yellow, and magenta) to run. The color ink cartridges can be purchased as a multi-pack, containing all of the colors, or in single-color cartridges.

22.      Purchasing color ink or toner cartridges is significantly more expensive than purchasing black ink or toner. As HP admits on its website, the number of printable pages per cartridge is lower on per-dollar basis for HP's color cartridges versus their black cartridges.[4]

---

[4]   https://store.hp.com/us/en/mdp/ink--toner---paper/hp-950---951-ink-cartridges#!&tab=vao   (last visited Jul. 13, 2020).

**FIRST AMENDED CLASS ACTION COMPLAINT**

## II.    HP's Misleading And Unfair Practices

23.    The Printers challenged in this Complaint are all HP printers which engage in underprinting and/or do not allow consumers to continue printing in black and white when the Printers' color cartridges are depleted.

24.    HP markets and sells the Printers as being capable of printing in both color and black ink.

25.    HP has intentionally designed and engineered the Printers to use a significant amount of color ink even when consumers are printing purely black and white images or text. HP calls this "underprinting."

26.    As a result of underprinting, color ink is depleted even when printing images or text in black and white, forcing consumers to use more color ink, and therefore spend more money, than they reasonably expect to. HP further intentionally designed and engineered the Product to cease printing in black ink if the Product's color ink is depleted, even if the consumer wants to print a black image or text, they must first purchase more color ink.

27.    Given that HP designed the Printers with these features, and the difficulty for consumers to discover them prior to purchase, HP has exclusive knowledge of its deceptive acts and practices. At the point of sale, HP fails to disclose to consumers these foregoing deceptive and fraudulent acts. To make matters worse, while color ink is used when printing images or text in black and white, consumers have no reasonable way of knowing that such depletion is occurring because no color other than black is detectable on the page. Based on the foregoing facts, reasonable consumers do not know and would have no reason to know that color ink is used during the printing of black and white text and images.

28.    Moreover, if a consumer removes the color ink cartridge and attempts to print images or text in black and white, the Printers will not print.

29.    Due to HP's intentional "underprinting" process, the Printers will ultimately stop printing when color ink has depleted, even if the consumer wants to continue printing using just black ink.

**FIRST AMENDED CLASS ACTION COMPLAINT**

30.     As a result of this, the Printers' color cartridges have a shorter lifespan than reasonably expected by consumers, and consumers are forced to expend more money repurchasing color ink.

31.     Despite engaging in the foregoing practices, at the point of sale, HP fails to disclose to consumers that the Printers will eventually cease printing unless color ink is available, even if the consumer wants to print in black and white. HP concealed the underprinting information from its customers, resulting in increased sales as customers are required to purchase color ink at an increased rate, which is more expensive than black ink. Thus, reasonable consumers do not know and would have no reason to know that they will not be able to print in black if the color ink has depleted.

32.     Had Plaintiff and other consumers known that the printers would engage in underprinting, or that they would not be able to print black and white images and text unless color ink is also available, they would not have purchased the Printers or would have paid significantly less for them. Not only are consumers' valuable color cartridges being depleted at an accelerated rate, but consumers are purchasing more replacement color cartridges than they would have but for Defendant's conduct. Even if they only wish to print in black and white, Defendant's underprinting design requires consumers to purchase color ink to continue printing. Therefore, Plaintiff and consumers have suffered injury in fact as a result of HP's deceptive practices.

33.     Each class member has been exposed to the same or substantially similar deceptive practices, as at all relevant times HP uniformly fails to disclose at the point of sale that color ink is used when printing in black and white, and that the Printers will not be able to print unless color ink is available.

34.     As a result of its misleading business practice, and the harm caused to Plaintiff and other consumers, HP should be required to pay for all damages caused to consumers, including Plaintiff. Furthermore, HP should be enjoined from engaging in these deceptive practices.

**III.     HP's Knowledge and Intent**

35.     As the entity responsible for designing the Printers, HP knew or reasonably should have known that the Printers are unable to print when the color cartridges are depleted and that the Printers were designed to underprint. Nonetheless, HP failed to disclose these facts to consumers at

the point of sale.

36. Furthermore, HP knew or reasonably should have known that consumers are deceived and harmed by Defendant's failure to conspicuously disclose its unfair practices. Since as early as 2006, HP has been involved in extensive class action litigation concerning its marketing and sale of its printers and/or ink products, including, *inter alia¸* allegations that its ink cartridges prematurely required replacement, allegations that it ran an ink cartridge monopoly, and even similar allegations regarding underprinting.

37. Indeed in 2006, consumers Carl K. Rich and David Duran brought a class action suit against HP, alleging substantially similar deceptive conduct as alleged herein. *See Rich et al. v. Hewlett-Packard Company*, No. C-06-03361-JF, (N.D. Cal.). HP ultimately resolved the *Rich* action after it was consolidated with several other related actions against HP. *See In re HP Inkjet Printer Litig.*, No. 5:05-cv-03580-JF (N.D. Cal.) As a part of the settlement, HP promised to do the following in response to the *Rich* action:[5]

> (2) HP will incorporate on its website and/or user manuals disclosures regarding "underprinting"—the inkjet technology at issue in the *Rich* action, whereby certain HP color inkjet printers may, in certain circumstances depending on the printer settings and customer inputs, use a combination of inks from the tri-color (or other, non-black color) and black inkjet cartridges to produce black text and images. These disclosures will include a description of what underprinting is, why it is used, and some of the options for disabling or minimizing the use of underprinting. HP also will include disclosures regarding page yields including a summary of HP's ISO testing for page yields and an explanation that actual yield varies depending on the content of printed pages and other factors.

38. To the extent that HP may have added purported statement(s) regarding underprinting on its website and/or user manuals in response to the settlement, and to the extent they even cure any consumer deception, such statement(s) are not conspicuous to reasonable consumers when they are purchasing the Printers, due to their placement and/or presentation on such platforms. For example, the user manual was not included in the box for Plaintiff's printer. Further, nowhere on HP's store webpage for HP OfficeJet Pro 8630, the printer purchased by Plaintiff, does HP disclose that the

---

[5] *See id.* at ECF No. 252 at 2.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Printer uses color ink when printing in black and white.

39. HP knew that the lack of disclosures misleads consumers into believing the Printers will not engage in underprinting or terminate the Printer's ability to print when color ink is depleted, as described in detail herein, but maintained the lack of disclosures to increase the sale of its more expensive color ink. In that same vein, to the extent HP purportedly included any such statement on customer support pages, a reasonable consumer would not visit such webpages prior to purchasing the Product, and in any event, would only do so after they have encountered some issue. Accordingly, HP's post-purchase provision of any purported statement about underprinting is therefore ineffective.

40. Furthermore, a portion of the Printers' sales occurs in-store rather than online. Such was the case for Plaintiff Rose's purchase. Nowhere at the point of sale, including on the Printers' packaging and on Defendant's in-store advertisements and/or shelf tags, does HP directly disclose that the Printers utilize underprinting.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of herself and all persons in the United States who, within the relevant statute of limitations periods, purchased for personal, family, or household purposes any of the Printers ("Nationwide Class").

42. Plaintiff Rose also seeks to represent a subclass defined as all California citizens who, within the relevant statute of limitations periods, purchased any of the Printers ("California Subclass").

43. Plaintiff Rose also seeks to represent a subclass defined as all California citizens who, within the relevant statute of limitations periods, purchased for personal, family, or household purposes any of the Printers ("California Consumer Subclass").

44. Excluded from the Classes are Defendant, the officers and directors of the Defendant at all relevant times, members of its immediate families and its legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest. Any judge and/or magistrate judge to whom this action is assigned, and any members of such judges' staffs and

immediate families are also excluded from the Classes. Also excluded from the Classes are persons or entities that purchased the Printers for sole purposes of resale.

45.     Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

46.     Plaintiff Rose is member of the Nationwide Class, the California Subclass, and the California Consumer Subclass.

47.     Numerosity:  According to information and belief, Defendant has sold at least tens of thousands of Printers.  The Printers are sold online on HP's website, Amazon.com, and other online retailers, as well as in stores such as BestBuy and Office Depot.  Further, members of the Classes are so numerous that their individual joinder herein is impractical.  While the precise number of class members and their identities are unknown to Plaintiff at this time, the number may be determined through discovery.

48.     Common Questions Predominate:  Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual class members.  Common legal and factual questions include, but are not limited to, whether Defendant failed to disclose that color ink is used when printing in black and white and therefore violated various consumer protection statutes and common laws.

49.     Typicality:  Plaintiff's claims are typical of the claims of the Classes she seeks to represent in that Plaintiff and members of the Classes were uniformly not informed by HP of the material fact that color ink is used when printing images or text in black and white, and that the printers are unable to continue printing when the color cartridges are empty, purchased the Printers without such material information, and suffered losses as a result of such purchases.

50.     Adequacy:  Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members of the Classes they seek to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

**FIRST AMENDED CLASS ACTION COMPLAINT**

51.     Superiority:  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes.  The size of each claim is too small to pursue individually, and each individual Class member will lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments. The class action mechanism is designed to remedy harms like this one that are too small in value, although not insignificant, to file individual lawsuits for.

52.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because HP has acted or refused to act on grounds that are generally applicable to the class members, thereby making final injunctive relief appropriate with respect to all Classes.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq.***
***(for the Nationwide Class; in the alternative, for the California Subclass)***

53.     Plaintiff repeats the allegations contained in paragraphs 1-52 above as if fully set forth herein.

54.     Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, for the California Subclass, against Defendant.

55.     The Printers are "goods" pursuant to California Civil Code § 1761(a), and the purchases of the Printers by Plaintiff Rose and members of the Nationwide and California Subclass constitute "transactions" pursuant to Cal. Civ. Code § 1761(e). Further, Plaintiff and members of the proposed Nationwide Class and California Subclass are consumers within the meaning of Cal. Civ. Code § 1761(d).

56.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ." By omitting that the Printers are designed to engage in underprinting and are further unable to print once

the color ink is depleted, HP failed to disclose material facts regarding the Printers' characteristics and use. A reasonable consumer would believe that the Printers would be able to print in black and white as long as black ink is available in the printer and that the Printers would not use color ink when printing black images and text. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

57. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By omitting that the Printers are designed to engage in underprinting and are further unable to print once the color ink is depleted, HP failed to disclose material facts regarding the Printers' standard, quality, and grade. A reasonable consumer would believe that the Printers would be able to print in black and white as long as black ink is available in the printer and that the Printers would not use color ink when printing black images and text. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

58. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By omitting that the Printers are designed to engage in underprinting and are further unable to print once the color ink is depleted, HP advertised the Printers as being capable of operating as a normal, functioning printer. However, because the Printers are designed to engage in underprinting and are further unable to print once the color ink is depleted, they do not operate as a normal, functioning printer. Therefore, HP has violated section 1770(a)(9) of the CLRA.

59. Cal. Civ. Code § 1770(a)(15) prohibits "[r]epresenting that a part, replacement, or repair service is needed when it is not." Due to HP's design of the Printers, consumers are told to replace their color ink cartridges for the Printers once they are depleted in order to continue printing in black and white. However, such replacement is not inherently needed and is instead a result of HP's design of the Product. Therefore, HP has violated section 1770(a)(15) of the CLRA.

60. Because the Printers' underprinting and inability to function once the color ink is depleted pertain to the Printers' central functionality, HP was obligated to disclose these material facts to Plaintiff Rose and other consumers. Because HP failed to disclose these material facts, consumers were misled. At all relevant times, HP knew or reasonably should have known that there was no disclosure at the point of sale that the Printers use color ink even when printing in black and

white, or that the Printers cease to print even in black if color ink is unavailable.

61. At all relevant times, HP knew or reasonably should have known that Plaintiff Rose and other members of the Nationwide Class and California Subclass relied on the foregoing representations and omissions and continue to be deceived and harmed by HP's foregoing unfair practices. This is especially the case in light of Defendant's prior litigation on this issue.

62. Plaintiff Rose and members of the Nationwide Class and California Subclass reasonably and justifiably relied on HP's misleading representations and fraudulent omissions regarding the Printers. Plaintiff Rose and other consumers did not know, and had no reason to know, at the point of sale that color ink would be used when printing in black and white, or that the Printers would no longer print if the color ink was depleted.

63. Plaintiff Rose and members of the Nationwide Class and California Consumer Subclass suffered injuries caused by HP because they would not have purchased the Printers, or would have paid significantly less for the Printers, had they known that HP's conduct was misleading and fraudulent.

64. Under Cal. Civ. Code § 1780(a), Plaintiff Rose and members of the Nationwide Class and California Consumer Subclass seek damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate for HP's violations of the CLRA.

65. Pursuant to Cal. Civ. Code § 1782, on May 1, 2019, counsel for Plaintiff mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant. Defendant received the notice and demand letter on May 3, 2019. Because Defendant has failed to fully rectify or remedy the damages caused within 30 days after receipt of the notice and demand letter, Plaintiff Rose timely filed the Class Action Complaint for a claim for damages under the CLRA.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***
(*for the Nationwide Class; in the alternative, for the California Subclass*)

66. Plaintiff Rose repeats the allegations contained in paragraphs 1-52 above as if fully set forth herein.

**FIRST AMENDED CLASS ACTION COMPLAINT**

67.     Plaintiff Rose brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Subclass against Defendant.

68.     UCL § 17200 provides, in pertinent part, that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." California Business and Professional Code ("Cal. Bus. & Prof. Code") § 17200.

69.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

70.     HP's misrepresentations and omissions regarding the Printers' inability to print once the color cartridges are depleted, and the Printers' use of color ink when printing in black and white, were and continue to be "unlawful" because they violate the CLRA and other applicable laws as described herein.

71.     As a result of HP's unlawful business acts and practices, HP has and continues to unlawfully obtain money from Plaintiff and members of both the Nationwide Class and California Subclass.

72.     Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

73.     HP's conduct was and continues to be of no benefit to purchasers of the Printers, as it is misleading, unfair, unlawful, and is injurious to consumers who purchased the Printers and were deceived by HP's fraudulent omissions and misrepresentations. Deceiving consumers about the functionality of the Printers and ceasing their ability to print in black and white, even if black ink is available, is of no benefit to the consumers. Therefore, Defendant's conduct was and continues to be "unfair."

74.     As a result of HP's unfair business acts and practices, HP has and continues to unfairly obtain money from Plaintiff, and members of both the Nationwide Class and California Subclass.

75. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

76. HP's conduct here was and continues to be fraudulent because it has and will continue to likely deceive consumers by failing to disclose the fact that the Printers' color ink is used when printing images or text in black and white, and that the printers are unable to continue printing when the color cartridges are empty, even if the consumer is attempting to print a purely black and white image or text. Because HP misled and will likely continue to mislead Plaintiff and members of both the Nationwide Class and California Subclass, HP's conduct was "fraudulent."

77. As a result of HP's fraudulent business acts and practices, HP has and continues to fraudulently obtain money from Plaintiff and members of both the Nationwide Class and California Subclass.

78. Plaintiff requests that this Court cause HP to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of both the Nationwide Class and California Subclass, to disgorge the profits HP made on these transactions, and to enjoin HP from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff, and members of both the Nationwide Class and California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

79. Monetary damages are an inadequate remedy at law because injunctive relief is necessary to deter Defendant from continuing its false and deceptive conduct regarding the Printers.

### THIRD CLAIM FOR RELIEF
### Violation of California's Song-Beverly Consumer Warranty Act,
### California Civil Code §§ 1790, *et seq.*
**(*for the Nationwide Class; in the alternative, for the California Subclass*)**

80. Plaintiff Rose repeats the allegations contained in paragraphs 1-52 above as if fully set forth herein.

81. Plaintiff Rose brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Subclass against Defendant.

82. Plaintiff Rose and those similarly situated were "buyers" of "consumer goods" as

defined in Cal. Civ. Code § 1791(a-b). The Printers sold to Plaintiff, and those similarly situated, are "consumer goods" as defined by Cal. Civ. Code § 1791(a).

83.     Defendant is a "manufacturer," and "retail seller," seller," or "retailer" as defined in Cal. Civ. Code § 1791(j) and (l).

84.     An implied warranty of merchantability arose out of and was related to Defendant's sales of the Printers.

85.     Defendant breached the implied warranty of merchantability by selling Printers that are unable to print once the color cartridges are depleted, and use color ink when printing images and texts in black and white only. By omitting that the Printers are designed to engage these deceptive practices, HP failed to disclose material facts regarding the Printers' central functionalities. Because Defendant omitted material facts regarding the Printers' central functionality, HP was obligated to disclose these material facts to Plaintiff Rose and other consumers. Because HP failed to disclose these material facts, consumers were misled.

86.     As a result of HP's breach of this implied warranty, which renders the Printers to not perform as warranted and are unfit for normal use, HP has and continues to unlawfully obtain money from Plaintiff Rose and members of both the Nationwide Class and California Subclass.

87.     Plaintiff Rose and members of the Nationwide Class and California Subclass have suffered and will continue to suffer damages as a result of Defendant's failure to comply with its warranty obligations. Accordingly, Plaintiff and the Class are entitled to recover such damages under the Song-Beverly Act, including damages pursuant to Civ. Code §§ 1791.1(d) and 1974.

88.     Defendant's breaches of warranty described herein were willful. Thus, a civil penalty should be imposed upon Defendant in an amount not to exceed twice the amount of actual damages.

### FOURTH CLAIM FOR RELIEF
### Fraudulent Concealment
### (*for the Nationwide Class; in the alternative, for the California Subclass*)

89.     Plaintiff repeats the allegations contained in paragraphs 1-52 above as if fully set forth herein.

**FIRST AMENDED CLASS ACTION COMPLAINT**

90.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class. In the alternative, Plaintiff brings this claim individually and on behalf of the proposed California Subclass.

91.      As the entity responsible for designing the Printers, HP knew or reasonably should have known that the Printers are unable to print when the color cartridges are depleted and that the Printers were designed to underprint.

92.     Despite HP's duty to disclose these material facts to Plaintiff and class members, HP concealed these material facts from Plaintiff at the point of sale.

93.     HP had a duty to disclose these material facts given that Printers' underprinting and inability to function once the color ink is depleted pertain to the Printers' central functionality: printing images and text. Given that HP designed and marketed the Printers, and that these omissions pertain to facts that, if revealed to consumers, would affect their purchasing decisions in that they would not have purchased or would have paid less for the Printers, HP's concealment of these material facts was intentional and with the intent to defraud Plaintiff and class members.

94.     Plaintiff and members of the Nationwide Class and California Consumer Subclass suffered injuries caused by HP given that, had they known that the printers would engage in underprinting, or that the printers would not print black and white images or text unless color ink is also available, they would not have purchased the Printers or would have paid significantly less for them.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
(*for the Nationwide Class; in the alternative, for the California Subclass*)

95.     Plaintiff repeats the allegations contained in paragraphs 1-52 above as if fully set forth herein.

96.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class. In the alternative, Plaintiff brings this claim individually and on behalf of the proposed California Subclass.

97.     California Commercial Code § 2314(1) provides that "a warranty that the goods shall

be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Comm. Code § 2314(1).

98.     Furthermore, California Commercial Code § 2314(2) provides that "[g]oods to be merchantable must be at least such as . . . [a]re fit for the ordinary purposes for which such goods are used[.]" Cal. Comm. Code § 2314(2)(c).

99.     HP is a merchant with respect to the sale of printers and ink/toner cartridges, such as the Printers in this action.  Therefore, a warranty of merchantability is implied in every contract for sale of the Printers to consumers.

100.    In its sale of the Printers, HP has provided an implied warranty that the Printers would continue to print black and white images and text as long as the printer contains black ink, as this is the ordinary purpose of a printer.  However, because HP designed the printer to cease printing black and white images and text even if the printer contains black ink, the Printers do not operate as ordinary printers.

101.    Moreover, HP has provided an implied warranty that the Printers will use only black ink when printing black and white text and images. However, because HP designed the printer to use color ink even when printing black text and images, the Printers do not use only black ink when printing black and white text and images.

102.    Therefore, HP has breached its implied warranty of merchantability regarding the Printers.

103.    If Plaintiff and members of the Classes had known that the Printers were designed to cease functioning despite the availability of black ink, they would not have purchased the Printers or would have paid less for them.  Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

### SIXTH CLAIM FOR RELIEF
#### Common Law Fraud
#### (for the Nationwide Class; in the alternative, for the California Subclass)

104.    Plaintiff repeats the allegations contained in paragraphs 1-52 above as if fully set forth

**FIRST AMENDED CLASS ACTION COMPLAINT**

herein.

105.   Plaintiff bring this claim individually and on behalf of the members of the Classes against Defendant.

106.   HP has willfully, falsely, and knowingly omitted the fact that the Printers' color ink is used when printing images and text in black and white and that the printers cease printing when the color cartridges are empty, even if the consumer is attempting to print purely black and white images or text.  Therefore, HP has made knowing, fraudulent omissions as to the Printers.

107.   HP's omissions were material (*i.e.*, the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the central functionalities of the Printers: the ability to print and the use of ink during the printing process.

108.   HP knew or recklessly disregarded the fact that the Printers would, unbeknownst to consumers, deplete color ink when printing black and white images and text and further cease printing when the color cartridges are empty.

109.   HP intended that Plaintiff and other consumers rely on these omissions, as they are pertaining to facts that, if revealed to consumers, would affect their purchasing decisions in that they would not have purchased or would have paid less for the Printers.

110.   Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's omissions when purchasing the Printers and had the correct facts been known, would not have purchased the Printers or would not have purchased them at the prices at which they were offered.

111.   Therefore, as a direct and proximate result of HP's fraud, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Printers and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**FIRST AMENDED CLASS ACTION COMPLAINT**

## SEVENTH CLAIM FOR RELIEF
## Quasi-Contract/Restitution
### (for the Nationwide Class; in the alternative, for the California Subclass)

112.    Plaintiff repeats the allegations contained in paragraphs 1-52 above as if fully set forth herein.

113.    Plaintiff bring this claim individually and on behalf of the members of the Classes against Defendant.

114.    As alleged herein, HP intentionally, recklessly, and/or negligently omitted material information about the Printers to Plaintiff and members of the Classes to induce them to purchase the Printers.  Plaintiff and members of the Classes have reasonably relied on the misleading omissions. Plaintiff and members of the Classes therefore have been induced by HP's misleading and false omissions about the Printers, and paid for them when they would and/or should not have, or paid more money to HP for the Printers and replacement cartridges than they otherwise would and/or should have paid.

115.    Plaintiff and members of the Classes have conferred a benefit upon HP, as HP has retained monies paid to them by Plaintiff and members of the Classes.

116.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – *i.e.*, Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon HP because HP intentionally designed the Printers to consume color ink even if consumers are printing purely black and white images and text, and also by intentionally designing the Printers to cease printing if the Product's color ink is depleted, even if the consumer wants to print images or text in black and white.

117.    Therefore, it is inequitable and unjust for HP to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefit compared to the value actually received.

118.    As a direct and proximate result of HP's unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by HP from its deceptive, misleading, and unlawful conduct as alleged herein.

1    119.    Monetary damages are an inadequate remedy at law because injunctive relief is

2    necessary to deter HP from continuing its false and deceptive conduct regarding the Printers.

3                                **<u>PRAYER FOR RELIEF</u>**

4         WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

5    judgment against Defendant as follows:

6         a)       For an order certifying the Classes under Rule 23 of the Federal Rules of Civil

7    Procedure, naming Plaintiff as representative of all Classes, and naming Plaintiff's attorneys as

8    Class Counsel to represent all Classes;

9         b)       For an order declaring that HP's conduct violates the statutes and laws referenced

10   herein;

11        c)       For an order finding in favor of Plaintiff, and all Classes, on all counts asserted

12    herein;

13        d)       For an order awarding all damages in amounts to be determined by the Court and/or

14   jury;

15        e)       For prejudgment interest on all amounts awarded;

16        f)       For interest on the amount of any and all economic losses, at the prevailing legal

17   rate;

18        g)       For an order of restitution and all other forms of equitable monetary relief;

19        h)       For injunctive relief as pleaded or as the Court may deem proper;

20        i)       For an order awarding Plaintiff and all Classes their reasonable attorneys' fees,

21   expenses and costs of suit, including as provided by statute such as under Fed. R. Civ. P. 23(h) and

22   California Code of Civil Procedure Section 1021.5; and

23        j)       For any other such relief as the Court deems just and proper.

24                              **<u>DEMAND FOR TRIAL BY JURY</u>**

25        Plaintiff demand a trial by jury on all issues so triable.

26

27

28

**FIRST AMENDED CLASS ACTION COMPLAINT**

Dated: July 13, 2020

**FARUQI & FARUQI, LLP**

By: */s/ Benjamin Heikali*
Benjamin Heikali, Bar No. 307466
Joshua Nassir, Bar No. 318344
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: 424.256.2884
Fax: 424.256.2885
E-mail: bheikali@faruqilaw.com
   jnassir@faruqilaw.com


**WALSH PLLC**

Bonner C. Walsh *(Pro Hac Vice)*
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
Email: bonner@walshpllc.com

**FIRST AMENDED CLASS ACTION COMPLAINT**

DocuSign Envelope ID: 770FC6E4-60FA-42B0-89CE-649F57C4DCB4

## **CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Christina Rose, declare as follows:

1.      I am the Plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.      This Class Action Complaint is filed in the proper place of trial because Defendant HP Inc. maintains its principal place of business, or nerve center, at its headquarters in Palo Alto, California.

I declare under penalty of perjury that the foregoing is true and correct, executed on _____ at Mill Valley, California.

4/9/2020 | 5:59 PM PDT



Christina Rose