Benjamin Heikali (SBN 307466)
*E-mail: bheikali@faruqilaw.com*
Joshua Nassir (SBN 318344)
*E-mail: jnassir@faruqilaw.com*
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

Bonner C. Walsh (*pro hac vice*)
**WALSH P.L.L.C.**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

*Attorneys for Plaintiff Christina Rose*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ROSE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>     v.<br><br>HP INC.,<br><br>    Defendant. | Case No.: 3:20-cv-02450-VC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date: November 5, 2020<br>Time:  10:00 a.m.<br>Courtroom:  04<br>Judge:  Hon. Vince Chhabria<br><br>FAC filed: July 13, 2020 |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS ..................................................................................... 1

III.    LEGAL STANDARD............................................................................................ 2

IV.     ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3)) .................................... 3

V.      ARGUMENT ........................................................................................................ 3

        A.      HP's Omissions Are Fraudulent ................................................................ 3

        B.      HP Was Dutybound to Disclose the Design Limitations............................ 4

        C.      HP Held Exclusive Knowledge Regarding The Design Limitations.......................... 4

        D.      HP Actively Concealed A Material Fact: The Existence Of The Printers' Design
                Limitations ................................................................................................. 8

        E.      The Design Limitations Are Material To Consumers............................................... 10

        F.      HP Intended To Deceive Consumers ...................................................... 11

        G.      HP's Conduct Is Unlawful and Unfair Under the UCL............................... 12

        H.      HP Violated the Song-Beverly Act and Breached Its Implied Warranty ................. 12

        I.      Plaintiff Has Adequately Pled Her Quasi-Contract Claim ....................... 14

        J.      Plaintiff Has Standing to Seek Injunctive Relief ...................................... 15

VI.     CONCLUSION..................................................................................................... 15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                      **Page(s)**

3

*Balser v. Hain Celestial Grp., Inc.*,
   640 F. App'x 694 (9th Cir. 2016) .........................................................................6

4

*Bell Atl. Corp. v. Twombly*,
5
   550 U.S. 544 (2007)..............................................................................................3

6

*Birdsong v. Apple, Inc.*,
7
   590 F.3d 955 (9th Cir. 2009) ..............................................................................14

8

*C.W. v. Epic Games, Inc.*,
   No. 19-CV-03629-YGR, 2020 WL 5257572 (N.D. Cal. Sept. 3, 2020) ...................4

9

*In re Carrier Iq, Inc. Consumer Privacy Litig.*,
10
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................13

11

*Chester v. TJX Cos., Inc.*,
   No. 5:15-cv-01437-ODW (DTB), 2016 WL 4414768 (C.D. Cal. Aug. 18, 2016)...............5, 9

12

*Clemens v. DaimlerChrysler Corp.*,
13
   534 F.3d 1017 (9th Cir. 2008) .............................................................................13

14

*Collins v. eMachines, Inc.*,
15
   202 Cal. App. 4th 249 (2011) ...............................................................................5

16

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995) ...............................................................................11

17

*Czuchaj v. Conair Corp.*,
18
   No. 13-CV-1901-BEN (RBB), 2014 WL 1664235 (S.D. Cal. Apr. 18, 2014).........................5

19

*David v. Baker*,
20
   129 F. App'x 358 (9th Cir. 2005) ..........................................................................2

21

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2017) ...............................................................................15

22

*De la Cabada v. Ytel, Inc.*,
23
   No. 19-CV-07178-JSC, 2020 WL 1156909 (N.D. Cal. Mar. 10, 2020)...........................7, 9

24

*Ehrlich v. BMW of N. Am., LLC*,
25
   801 F. Supp. 2d 908 (C.D. Cal. 2010) .................................................................12

26

*Electra Cruises, Inc. v. Camping World RV Sales*,
   Case No.11CV1798 AJB (DHB), 2013 WL 5775333 (S.D. Cal. Oct. 25, 2013)...................13

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

*Elias v. Hewlett-Packard Co.*,
    No. 12-CV-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014)............................ *passim*

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................................................................ *passim*

*Gomez v. Carmax Auto Superstores California, LLC*,
    No. 2:14-CV-09019-CAS, 2015 WL 350219 (C.D. Cal. Jan. 22, 2015)...............................11

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ...........................................................................................4

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (2007) ......................................................................................13, 14

*Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*,
    No. 3:19-CV-00290-LAB-LL, 2019 WL 3766654 (S.D. Cal. Aug. 9, 2019) ..........................7

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) ...........................................................................................14

*Luong v. Subaru of Am., Inc.*,
    No. 17-cv-03160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018)...................................11

*Mosqueda v. Am. Honda Motor Co., Inc.*,
    443 F. Supp. 3d 1115 (C.D. Cal. 2020) .............................................................................13

*Mui Ho v. Toyota Motor Corp.*,
    931 F. Supp. 2d 987 (N.D. Cal. 2013) ........................................................................3, 8, 12

*Prescott v. Bayer HealthCare LLC*,
    No. 20-CV-00102-NC, 2020 WL 4430958 (N.D. Cal. July 31, 2020)..................................15

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ...........................................................................................3

*Romero v. Flowers Bakeries, LLC*,
    No. 14-cv-05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015)...................................14

*Rushing v. Williams-Sonoma, Inc.*,
    No. 16-CV-01421-WHO, 2017 WL 766678 (N.D. Cal. Feb. 28, 2017) .............................8, 9

*Sprint Spectrum Realty Co., LLC v. Hartkopf*,
    No. 19-CV-03099-JSC, 2019 WL 6251251 (N.D. Cal. Nov. 22, 2019)...........................11, 12

*Stanwood v. Mary Kay, Inc.*,
    941 F. Supp. 2d 1212 (C.D. Cal. 2012) ............................................................................10

*Sumer v. Carrier Corp.*,
    No. 14-CV-04271-VC, 2015 WL 758314 (N.D. Cal. Feb. 20, 2015) ..................................8, 9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ..................................................................................2

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods.*
    *Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...............................................................13

*Walker v. Nestle USA, Inc.*,
    No. 3:19-CV-723-L-BGS, 2020 WL 3317194 (S.D. Cal. June 17, 2020)...........................6, 9

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .............................................................................5, 6

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ..............................................................................3

*Zaragoza v. Apple Inc.*,
    No. 18-CV-06139-PJH, 2019 WL 1171161 (N.D. Cal. Mar. 13, 2019)..............................6, 9

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1    **I.      INTRODUCTION**

2          While HP sells printers, the real money is in the liquid gold: ink. It is ink and toner where HP

3    makes most of its money. Fully aware of this, HP has purposefully designed its Printers to use more

4    expensive color ink and toner when users want to print in only black and white. HP has also

5    programmed its Printers to prematurely stop printing when the color ink runs out, even if plenty of

6    black ink is available. These design limitations, which solely benefit HP through increased sales of

7    its expensive color ink and toner cartridges, are significant restrictions which consumers would not

8    reasonably expect when purchasing a printer. Unfortunately for consumers, discovering these design

9    limitations is no simple task. Reasonable consumers have no reason to look for them, especially at

10   the time of purchase. Whether a majority of consumers expect such limitations, which is a doubtful

11   scenario, is a question of fact for a later stage.

12         Nonetheless, in its Motion to Dismiss ("MTD"), HP claims it is absolved of all wrongdoing

13   because it purportedly "discloses" these limitations on obscure customer support webpages and a user

14   manual buried in the HP website. No reasonable consumer is going to dig into random pages on the

15   HP website before or during her shopping experience to discover design limitations she would have

16   no way of knowing existed. And even assuming a consumer decides to pull out a smartphone in the

17   middle of the shopping aisle to discover HP's purposeful design limitations, finding this information

18   is difficult. Significantly, this information does not appear on the webpage or inside the box for the

19   actual printers. HP also fails to inform the Court how customers can reach the customer support pages

20   containing this information. Thus, HP leaves consumers in the dark about these limitations and places

21   the burden on consumers to scour its website to find this information rather than be upfront with

22   customers. For these reasons, and as further set forth below, HP's MTD should be denied.

23   **II.     STATEMENT OF FACTS**

24         Plaintiff purchased an HP Office Jet Pro 8630 printer from Costco in 2017.  FAC ¶ 13. When

25   she purchased the printer, Plaintiff noticed that the printer came with both color and black ink and

26   believed the printer could print in both color and black ink. *Id*. However, unbeknownst to Plaintiff,

27   HP designed its printers to use color ink even when printing only black and white text and images,

28   and further designed the printer to not print at all – not even in black and white – if any of the ink

cartridges are depleted (the "Design Limitations"). *Id.* Nothing on the printer's packaging indicated the Design Limitations. *Id*. The webpage for Plaintiff's printer was equally devoid of this information. *Id.* at ¶ 38. Thus, Plaintiff believed that printing black and white documents would use only black ink, and that even if she was out of color ink, the printer could still print in black and white. *Id*. at ¶ 13.

Ink cartridges are a major cost component of home printing. *Id.* at ¶ 20. For printer companies such as HP, a majority of revenues and profits come from ink sales rather than printer sales. *Id.* Color ink cartridges are more expensive than black ink cartridges. *Id.* at ¶ 22. HP has intentionally designed the Printers to use color ink when printing in black and white. *Id.* at ¶ 25. HP calls this usage of both color and black ink "underprinting." *Id.* Upon depletion of any color of ink, which is sped up due to the underprinting process, the Printers cease functioning until the depleted color cartridge is replaced. *Id*. at ¶¶ 23, 29. This requires consumers to purchase costly HP color ink cartridges more frequently, making the Printers more expensive to operate than reasonably anticipated. *Id.* at ¶ 30. Reasonable consumers do not know, and would have no reason to know prior to purchase, that the Printers perform in this manner. *Id*. at ¶ 31. HP knew of the Design Limitations, but failed to disclose these facts to consumers at the point of sale in order to increase color ink sales. *Id*. at ¶ 39.

Even on its website, HP downplays the amount of color ink that is used when printing black. "*Some* ink from all the ink cartridges is used in *periodic servicing tasks*." Declaration of Samuel Liversidge ("Liversidge Dec."), Ex. 1 at 2 (emphasis added). "To decrease grain, *some* black areas *might* be printed with a mix of black and color inks." *Id*. at 4 (emphasis added); *see also id.*, Ex. 4 at 4. "Many HP printers utilize chemical interactions to improve the quality and permanence of plain paper black text-and-graphics by adding *small amounts* of color ink to *certain* black areas." *Id.*, Ex. 2 at 3. Users are given instructions to disable underprinting, but even then "the printer still uses small amounts of ink from all the ink cartridges for occasional servicing tasks." *Id.*, Ex. 1 at 2.

## III.    LEGAL STANDARD

On a motion to dismiss, it is the defendant's burden to show that the plaintiff cannot state a claim for relief.  *David v. Baker*, 129 F. App'x 358, 360 (9th Cir. 2005). In evaluating a motion to dismiss, all factual uncertainties in the complaint should be construed in the light most favorable to the plaintiff. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). Further, the Court should

1  "draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd.*

2  *of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). To survive a motion to dismiss,

3  plaintiffs must only allege enough facts to "raise a right to relief above the speculative level, on the

4  assumption that all the allegations in the complaint are true[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S.

5  544, 555 (2007)  (citation omitted). Dismissal is proper only if the Court finds beyond doubt that

6  Plaintiff can prove no set of facts which would entitle her to relief.  *Wyler Summit P'ship v. Turner*

7  *Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

8  **IV.      ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))**

9        (1) Whether Plaintiff has sufficiently pled her common law fraud claim, including but not

10  limited to whether HP had a duty to disclose the design limitations and whether HP concealed a

11  material fact; (2) whether Plaintiff has sufficiently pled her UCL claims; (3) whether Plaintiff has

12  sufficiently pled her implied warranty claim; (4) whether Plaintiff has sufficiently pled her quasi-

13  contract claim; (5) whether Plaintiff has standing to seek injunctive relief; and (6) whether HP can

14  obtain judicial notice of various HP webpages.

15  **V.      ARGUMENT**

16        **A.      HP's Omissions Are Fraudulent**

17        A plaintiff sufficiently pleads fraud by omission and active concealment under California law

18  when demonstrating: "(1) the concealment or suppression of material fact, (2) a duty to disclose the

19  fact to the plaintiff, (3) intentional concealment with intent to defraud, (4) justifiable reliance, and (5)

20  resulting damages." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998-99 (N.D. Cal. 2013)

21  (the elements of fraud by omission and active concealment are "essentially the same").

22        HP concealed and failed to disclose the Design Limitations to Plaintiff, causing her to

23  purchase the printer under the reasonable assumption that no design limitations would purposefully

24  be programmed into the Printer. HP was dutybound to disclose these limitations given that these facts

25  were material and directly affect the Printers' central functionality -- their ability to print. HP decided

26  to stay silent and continue to manufacture the Printers with the Design Limitations, increasing profits

27  and requiring consumers to spend more money. Plaintiff would not have purchased the printer, or

28  would have paid less for it, had she known this information, causing her to lose money to HP's benefit.

1       HP excuses concealing the Design Limitations by claiming that Plaintiff should have pulled

2 out her smartphone while shopping for her printer, sifted through the HP website until she found how

3 to download her printer's user manual (which is not even located on the printer's web page),

4 downloaded the user manual for that specific printer, find additional webpages scattered across the

5 support section of HP's website, and closely scrutinize dozens of pages in the shopping aisles until

6 she became aware of HP's Design Limitations. It is simply unreasonable to create an Easter egg hunt

7 for information no reasonable consumer would believe exists, particularly when the consumer is

8 shopping at a store. At the very least, HP's bizarre expectations on how consumers shop for printers

9 is a deep factual inquiry which should not be resolved at this stage. Questions of fact aside, it is clear

10 that no reasonable consumer would stumble upon these Design Limitations, even if they searched for

11 them mid-shopping experience. And on the odd chance consumers did find them on HP's webpages,

12 the disclosures are only half-truths and downplay the severity of the Design Limitations.

13       Equally unavailing is HP's further contention that, regardless of any disclosure, HP did not

14 have a duty to disclose the Design Limitation because HP did not have exclusive knowledge of these

15 issues and they were nonetheless immaterial to consumers. As outlined below, HP's arguments run

16 contrary to ordinary consumer expectations and behavior.

17     **B.**    **HP Was Dutybound to Disclose the Design Limitations**

18       As HP acknowledges, "[a] duty to disclose material facts can arise where: (1) the defendant

19 has exclusive knowledge of such material facts not known or reasonably accessible to the plaintiff;

20 **or** (2) the defendant conceals a material fact from the plaintiff." *See* MTD 8; *Elias v. Hewlett-Packard*

21 *Co.*, No. 12-CV-00421-LHK, 2014 WL 493034, at *6 (N.D. Cal. Feb. 5, 2014) (emphasis added).[1]

22 Although Plaintiff need only show one of these factors, both circumstances are present here.

23     **C.**    **HP Held Exclusive Knowledge Regarding The Design Limitations**

---

[1] HP's contention that, "[t]raditionally," a duty to disclose requires a safety hazard has been rejected by the Ninth Circuit. MTD 7 n.4; *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863-64 (9th Cir. 2018) ("The recent California cases show that [a] safety hazard pleading requirement is not necessary in *all* omission cases" and that a duty to disclose is recognized when it relates to the product's "central functionality"); *C.W. v. Epic Games, Inc.*, No. 19-CV-03629-YGR, 2020 WL 5257572, at *5 (N.D. Cal. Sept. 3, 2020) ("[*Hodson*] has recognized a duty to disclose defects that relate to the 'central functionality' of a product."). Here, the "Printers' central functionality [is] printing images and text" and "the use of ink during the printing process." FAC ¶ 93, 107.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

HP argues that it could not have "exclusive knowledge" of the limitations because the "omitted facts were available on HP's website and in online user manuals." MTD 8. But "exclusive knowledge" does not mean that virtually zero information about the defect exists in the public realm. *Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN (RBB), 2014 WL 1664235, at *4 (S.D. Cal. Apr. 18, 2014) ("Exclusivity is not applied with rigidity, and is analyzed in part by determining whether the defendant has 'superior' knowledge of the defect."). A defendant has exclusive knowledge giving rise to a duty to disclose when defendant "knew of this [limitation] while plaintiffs did not, and, given the nature of the [limitation], it was difficult to discover." *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 256 (2011). Indeed, "Courts have persuasively found that exclusive knowledge is not automatically defeated by the presence of *information online*." *Czuchaj*, 2014 WL 1664235, at *4 (emphasis added).

Rather, exclusive knowledge means that the information is generally unavailable to the public unless they make an *unreasonable effort* to search for it. For example, in *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096–97 (N.D. Cal. 2007), the Court found that despite the fact that "prospective purchasers, with access to the Internet, could have read the many complaints about the failed speedometers" and "[s]ome may have" gone online to read complaints about this issue, "[m]any customers would not have performed an Internet search before beginning a car search. Nor were they required to do so." In other words, "customers cannot 'be expected to seek facts which they h[ave] no way of knowing exist' . . . . let alone is available on the internet." *Elias*, 2014 WL 493034, at *9 (holding that HP had a duty to disclose product issues despite these issues being "publicly available on the internet" because "Plaintiff had no reason to seek out information regarding [the issue].") (citations omitted).

The same principles apply here. HP's expectation that consumers should pull out their phones in the middle of the shopping aisle to look for purposefully engineered design limitations defies common sense. As California courts recognize, this expectation is wholly unrealistic. *Chester v. TJX Cos., Inc.*, No. 5:15-cv-01437-ODW (DTB), 2016 WL 4414768, at *11 (C.D. Cal. Aug. 18, 2016) (holding that "it is unrealistic for Defendants to expect consumers to pull out their smart phones and search the retailer's website" to find clarifying information) (relying on *Williams v. Gerber Prods.*

*Co.*, 552 F.3d 934, 939 (9th Cir. 2008)); *see also Walker v. Nestle USA, Inc.*, No. 3:19-CV-723-L-BGS, 2020 WL 3317194, at *3 (S.D. Cal. June 17, 2020) ("Even if the website contained sufficient information to dispel the allegedly deceptive message on the product labels, an issue as to which the Court expresses no opinion, this would not undermine Plaintiff's claims" given the Ninth Circuit's opinion in *Williams*); *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016) (relying on *Williams*, holding that "product information on a website also cannot override as a matter of law" the deception caused by defendant's conduct).

This is *precisely* Defendant's expectation. Hypothetically, while a nominal number of consumers may have taken the unusual approach of reading dozens of pages of an online user manual or HP FAQ pages prior to purchasing their printers, common sense dictates that a large majority would not. Plaintiff did not, as she had no reason to. If consumers are not expected to conduct an online search for defects for a purchase as significant as an automobile as in *Falk*, or for a personal computer as in *Elias*, they should not be required to do so for a printer. Regardless, questions regarding how consumers might behave in this regard are factual inquiries which are improper to resolve at this stage. *See Zaragoza v. Apple Inc.*, No. 18-CV-06139-PJH, 2019 WL 1171161, at *4 n.3 (N.D. Cal. Mar. 13, 2019) ("Moreover, there are factual questions concerning how much a consumer would have to investigate into the Apple TV menu structures to be exposed to much of the allegedly-curative information Apple describes.").

Even if a consumer *did* decide to look up their desired Printer online during a shopping trip, it is unlikely that they would have found HP's disclosures. Notably, the Printers' counterintuitive limitations are not even referenced or available on the webpage for Plaintiff's Printer. FAC ¶ 38.[2] Indeed, the webpage for Plaintiff's Printer, despite being rife with information, is silent about the Design Limitations and does not link to the user manual. Rather, HP hid the information on various customer support webpages while neglecting to inform the Court how a potential customer can even reach these webpages. *See* MTD 3-4 (citing Liversidge Dec., Exs. 1-4).

And once a consumer ultimately purchases the printer, they are further left in the dark. Nothing on the Printers' packaging informs consumers of the Design Limitations at the point of sale. FAC ¶

---

[2] *Available at* https://store.hp.com/us/en/pdp/hp-officejet-pro-8630-e-all-in-one-printer.

13. The user manual was not contained in the box for Plaintiff's printer. *Id.* at ¶ 38. During the printing process, the printer does not disclose that it is using color ink when printing in black and white. Indeed, the Design Limitations are only revealed once the consumer tries to print in black and white with an empty color cartridge. Like in *Falk*, "customers only became aware of the problem if they actually experienced it first-hand." *Falk*, 496 F. Supp. 2d at 1096.

It is not only unrealistic to expect consumers to scour the HP website to find this information, but HP's introduction of these webpages is improper. HP does not (and cannot) assert that Plaintiff ever visited the HP website. The two mere references to HP's website in the FAC, one for jurisdictional purposes pointing to HP's presence in California and the other regarding ink prices, does not permit HP to acquire judicial notice of various webpages on the HP website. *De la Cabada v. Ytel, Inc.*, No. 19-CV-07178-JSC, 2020 WL 1156909, at *1 n.3 (N.D. Cal. Mar. 10, 2020) ("Defendant asserts that because the FAC 'includes selective screenshots from [Defendant's] website, it is appropriate for [Defendant] to refer to, and for this Court to consider, other parts of [Defendant's] website for a more robust understanding of [Defendant's] business.' Not so. At this stage the Court can only consider the web pages 'directly quoted' in the FAC.") (citation omitted); *Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*, No. 3:19-CV-00290-LAB-LL, 2019 WL 3766654, at *2 (S.D. Cal. Aug. 9, 2019) ("A passing reference to a website does not transform every document associated with that website into a proper subject for judicial notice."). Similarly, the Court should refuse to take notice of the webpages. Rather, "[t]he statements in [Defendant's website] may support a defense at some later stage of the litigation, but they are irrelevant to Plaintiff's claims at this time." *Id.*

Finally, even if the Court considered that consumers could aggregate the user manual and scattered webpages, and understand them without excess difficulty, HP downplays the Design Limitations to the point that they would not adequately inform consumers of the extent of the Design Limitations. *See* Section II, *supra*. Even assuming a prospective buyer chooses to go through a scavenger hunt on HP's website to find information, HP fails to adequately inform consumers of the full extent of the Printers' Design Limitations and holds superior knowledge of these limitations. *Falk*, 496 F. Supp. 2d at 1097. Therefore, Plaintiff has sufficiently alleged that HP had a duty to

disclose these purposefully designed limitations because HP held exclusive knowledge of these facts and disclosed them only in a manner that is extremely difficult to discover.

### D.   HP Actively Concealed A Material Fact: The Existence Of The Printers' Design Limitations

Even if the Court was to find that HP did not have "exclusive knowledge" of the limitations, HP still had a duty to disclose the limitations because HP actively concealed the material information. Contrary to HP's assertion that Plaintiff did not allege any acts of concealment, the FAC pleads two actions widely accepted by Courts to state a claim for fraudulent concealment.

*First*, Plaintiff has demonstrated that HP was well-aware of consumer complaints regarding this issue ranging back to 2006, when HP customers brought a class action suit against HP alleging similarly deceptive conduct. FAC ¶¶ 36-38. Despite being put on notice that its conduct was highly deceptive, HP decided to *continue* manufacturing the Printers with these Design Limitations. In *Rushing*, the court found that the plaintiff "adequately alleged active concealment" when the plaintiff alleged that the defendant was subject to a "prior lawsuit" over similar allegations while making "affirmative denials" that its conduct was impermissible. *See Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-01421-WHO, 2017 WL 766678, at *6 (N.D. Cal. Feb. 28, 2017); *see also Mui Ho*, 931 F. Supp. 2d at 998–99 (finding that plaintiffs adequately plead intent to conceal when plaintiffs cited to "multiple other consumers' similar complaints" and defendants "replaced [the defective items] with other defective parts."). Similarly, HP has decided to ignore the outcry of its customers.

HP contends that Plaintiff admits that in settling the prior lawsuit, HP did "disclose" the limitation via its aforementioned webpages and the printer user manuals. MTD 9-10 (citing FAC ¶ 37). HP misses the point. Plaintiff alleges that even if HP disclosed the information, they only did so in places where no ordinary consumer would check before or during purchase. *See* Section V.C; *see also* FAC ¶ 38. Such a "disclosure" is insufficient. HP's reliance on *Sumer* to argue that it did not actively conceal the information because it was technically available falls equally flat. In *Sumer v. Carrier Corp.*, No. 14-CV-04271-VC, 2015 WL 758314, at *2 n.2 (N.D. Cal. Feb. 20, 2015), the plaintiff contended that the defendant placed deceptive representations in sales brochures for air-conditioning units and failed to disclose these material facts to consumers. *Id*. However, the *Sumer*

plaintiff alleged to have relied on the "'material misrepresentations and omissions'" in the brochure. *Id.* Here, Plaintiff never alleges that she relied on or was misled by HP's webpage or user manuals.

HP further claims that "[i]n the age of smartphones, all of this information is just a click and a swipe away, no matter where a consumer happens to be contemplating the purchase of a printer." MTD 10. However as explained above, the expectation that consumers should pull out their smart phones in the middle of their shopping trip to look for design limitations they would not reasonably expect is not only a question of fact, but is recognized by California courts as wholly unrealistic. *See Chester*, 2016 WL 4414768, at *11; *Walker*, 2020 WL 3317194, at *3. And even if a consumer decides to investigate HP's website, it is extremely doubtful that she would find the disclosures. Obtaining this information is not so simple. Indeed, the first place a consumer would likely look, the webpage for the printer, does not contain the user manual and does not mention the Design Limitations. FAC ¶ 38. While HP provides three webpages[3] which contain these disclosures, HP fails to inform the Court how consumers have to navigate HP's website to even reach those pages.

In any event, HP's assertions require factual inquiries, including (1) whether consumers would think to research the printers for these design limitations prior to purchase, and (2) even if they did look for them, how much a consumer would have to dig to find these *potentially* curative disclosures. These questions require insight into consumer behavior and are not suitable for determination at this stage. *Zaragoza*, 2019 WL 1171161, at *4. At this juncture, the only evidence regarding how consumers would behave in this context is from Plaintiff. Plaintiff reasonably believed that HP would not purposefully and prematurely cut her access from her printer or use color ink when printing in black and white. FAC ¶¶ 4-5, 13-14. To the contrary, HP has failed to proffer **any** evidence that consumers look at their smart phones during shopping experiences, let alone more specifically look for, or have reason to look for, information about the Design Limitations here prior to purchase.

**Second**, courts have routinely found that plaintiffs adequately plead active concealment when alleging a profit motive behind the defendant's failure to disclose. *See e.g., Rushing*, 2017 WL 766678, at *6 (holding that "affirmative acts can include . . . facts alleging that defendants concealed

---

[3] For the reasons discussed above, the Court should refuse to take judicial notice of these webpages. *See De la Cabada*, 2020 WL 1156909, at *1 n.3.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1  the defect in order to increase its sales" and collecting cases in support); *Stanwood v. Mary Kay, Inc.*,

2  941 F. Supp. 2d 1212, 1221 (C.D. Cal. 2012) (same); *see also*; *Elias*, 2014 WL 493034, at \*10 (same).

3       With the exorbitant costs of ink, HP's profit motive is clear. "[F]or printer companies such as

4  HP, a majority of their revenues and profits come from consumers purchasing replacement ink or

5  toner once it is depleted." FAC ¶ 20. Therefore, if the need to replace this ink is unnecessarily

6  hastened, HP's profits increase while consumers lose money. This is precisely what Plaintiff pleads

7  in her FAC, alleging that "as a result of [HP's design limitations], the Printers' color cartridges have

8  a shorter lifespan than reasonably expected by consumers, and consumers are forced to expend more

9  money repurchasing color ink" and that "HP concealed the underprinting information from its

10  customers, resulting in increased sales as customers are required to purchase color ink at an increased

11  rate, which is more expensive than black ink." *Id.* at ¶¶ 30-31. Accordingly, Plaintiff has sufficiently

12  pled that HP actively concealed these limitations and thus had a duty to conspicuously disclose them.

13      **E.**    **The Design Limitations Are Material To Consumers**

14       HP also makes the related argument that, even if the Court finds that HP had a duty to disclose

15  the limitations, these design limitations were not material to consumers. MTD 11. However, a cursory

16  glance at the FAC dispels this argument. FAC ¶ 14 (alleging that Plaintiff would not have purchased

17  the Printer or would have paid significantly less for it if she had known about the Design Limitations);

18  *Elias*, 2014 WL 493094, at \*6 (holding that the plaintiff "adequately pleaded materiality" for "[a]

19  non-disclosed fact" when alleging "he would have acted differently by not purchasing the computer

20  as ordered had he known about the [omitted facts]."). Without any authority in support, HP also baldly

21  states that the Design Limitations are not material to Plaintiff, and that her allegations are

22  contradictory, because she continues to use the printer she paid money for and would continue to

23  purchase other HP printers if HP ceased these limitations. MTD 11. To the contrary, these allegations

24  simply highlight materiality. Plaintiff intends to purchase HP printers again **only *if*** HP ceases its

25  deceptive practices. FAC ¶ 15. Clearly, she cares about the limitations. It is also nonsensical to expect

26  Plaintiff to spend additional money on a new printer without these design limitations given that she

27  has already spent money in the purchase of her HP Printer.

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1     **F.      HP Intended To Deceive Consumers**[4]

2          HP argues that Plaintiff did not adequately plead that HP intended to deceive consumers

3     because she only provided one conclusory allegation that "HP's concealment of [the design

4     limitations] was intentional and with the intent to defraud Plaintiff and class members." MTD at 11.

5     The plain words of the FAC demonstrate that HP is incorrect. As established in Section V.D, *supra*,

6     Plaintiff has pled multiple allegations which demonstrate that HP actively concealed the design

7     limitations from consumers. Because an active concealment necessarily includes an intent to defraud,

8     Plaintiff has already sufficiently established that HP intended to deceive consumers by concealing the

9     design limitations. *Falk*, 496 F. Supp. 2d at 1097 (active concealment of a material fact includes intent

10    to defraud); *Elias*, 2014 WL 493094, at *6 (same).  HP's contention that Plaintiff cannot demonstrate

11    intent to deceive because HP disclosed the limitations fails for the same reasons as discussed above;

12    no reasonable consumer would have realized these disclosures existed, and assuming they even

13    searched online, consumers would not have discovered these disclosures without substantial

14    difficulty. In any event, "[m]alice, intent, knowledge, and other conditions of a person's mind may

15    be alleged generally." Fed. R. Civ. P. 9(b); *Luong v. Subaru of Am., Inc*., No. 17-cv-03160-YGR,

16    2018 WL 2047646, at *3 (N.D. Cal. May 2, 2018). This is because a plaintiff cannot be expected to

17    plead a defendant's actual state of mind. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). Thus,

18    at this stage, Plaintiff has adequately alleged fraudulent intent on HP's behalf.

19          As with its prior arguments, HP's caselaw is entirely inapposite to this case. In *Gomez v.*

20    *Carmax Auto Superstores California, LLC*, No. 2:14-CV-09019-CAS (PLAx), 2015 WL 350219, at

21    *2, *9 (C.D. Cal. Jan. 22, 2015), although the plaintiff argued that the defendant engaged in fraudulent

22    omissions related to a used car's mileage, the plaintiff also alleged that the defendant's "sales

23    consultant[ ] showed her [a report] that 'indicated the mileage discrepancy.'" Here, Plaintiff was not

24    presented with any hint that the Design Limitations exist. In *Sprint Spectrum*, the counter-plaintiff

25    contended that the counter-defendant failed to disclose that communication antennas he contracted to

26

27    ───────────────
      [4] HP appears to only challenge the intent element for Plaintiff's common law fraud claim. MTD 11.
28    Indeed, HP admits that "[a] plaintiff may also proceed under a fraud-by-omission theory under the
      CLRA or UCL, although intent is not a required element of these claims." MTD 7.

have placed on his building would exceed 300 square feet per their agreement despite the counter-plaintiff being "capable of inspecting the aggregate square footage used . . . at any point over the past twenty-one years." *Sprint Spectrum Realty Co., LLC v. Hartkopf*, No. 19-CV-03099-JSC, 2019 WL 6251251, at *1, *4 (N.D. Cal. Nov. 22, 2019). Here, Plaintiff had no way to inspect the Printer in actual use prior to purchase to determine whether these design limitations existed.

## G.    HP's Conduct Is Unlawful and Unfair Under the UCL

Because Plaintiff has adequately pled that HP's Design Limitations constitute a fraudulent omission under common law and the CLRA, she also adequately alleged that HP's conduct is "unlawful" under the UCL. *Mui Ho*, 931 F. Supp. 2d at 999 ("Plaintiffs can plead a UCL violation under the 'unlawfulness' prong by pleading that a business practice violated a predicate federal, state, or local law" such as the CLRA and California's express and implied warranty statutes.).

Likewise, Defendant's conduct is "unfair" under the UCL. Deceiving consumers about the Printers' rate of usage of color ink and the Printers' inability to print, even in black and white, if any color cartridge is empty is of no benefit to consumers. FAC ¶¶ 72-73. As HP admits, when an omission forms the basis of both a fraudulent and unfair prong claim under the UCL, those claims rise and fall together. MTD 12; *see also Falk*, 496 F. Supp. 2d at 1098 ("This failure to disclose constitutes a violation of the CLRA, which in turn can be an unfair practice under the UCL."). As such, Defendant's motion to dismiss should be denied with respect to Plaintiff's UCL claim.

## H.    HP Violated the Song-Beverly Act and Breached Its Implied Warranty

HP challenges Plaintiff's implied warranty claim due to a purported lack of vertical privity. MTD 12-13. HP also argues that Plaintiff's Song-Beverly Act and implied warranty claims fail because Plaintiff is "merely . . . dissatisfied" with the printer. *Id*. at 13. Both arguments fall flat.

First, Plaintiff's implied warranty claim falls under the third-party beneficiary exception to the vertical privity requirement of Cal. Comm. Code § 2314.[5] Contrary to HP's assertion (MTD 12-

---

[5]  HP does not (and cannot) challenge Plaintiff's Song-Beverly Act claim under the privity requirement. *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 921 (C.D. Cal. 2010) ("[T]he Court agrees with Plaintiff and the weight of authority that the plain language of section 1792 of the Song–Beverly Act does not impose a similar vertical privity requirement" to California's implied warranty statute under Cal. Comm. Code. § 2314).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

13), the Ninth Circuit under *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) has not required vertical privity between the parties when, as here, the plaintiff is a third-party beneficiary to the transaction. *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1128 (C.D. Cal. 2020) (holding that the "Court agrees with [p]laintiffs" that "they are excepted from the privity requirement as third-party beneficiaries permitted to assert breach of implied warranty claims" under Cal. Comm. Code § 2314 and finding *Clemens* to be inapplicable); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1184 (C.D. Cal. 2010) ("[T]he clear weight of authority compels a conclusion that where plaintiffs successfully plead third-party beneficiary status, they successfully plead a breach of implied warranty claim."). Here, Plaintiff alleged that she was a third-party beneficiary of HP's sales of the printers to Costco, where HP knew would be ultimately sold to consumers like Plaintiff. FAC ¶ 13.

Second, HP urges that Plaintiff cannot maintain her implied warranty or Song-Beverly Act claims just because she is "merely . . . dissatisfied" with her printer. MTD 13. According to HP, the Printers are "fit for its ordinary purpose of printing" since they are technically able to print in both color and black and white. *Id.* But just because the Printers can *sometimes* print in black and white (and only with an additional purchase) does not mean the implied warranty is not breached. "[C]ourts have found that the implied warranty can be breached when, although capable of performing its ordinary function, the product nonetheless fails in a significant way to perform as a reasonable consumer would expect." *In re Carrier Iq, Inc. Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1109 (N.D. Cal. 2015). Plaintiff has alleged that the ordinary purpose of a printer is to continue printing in black and white as long as the printer contains black ink, which the printer fails to do. FAC ¶ 100. An ordinary printer should only use only black ink when printing black and white text and images, whereas the Printers use color ink when the user is printing a purely black image or text. *Id.* at ¶ 101.

Indeed, the minimum level of quality required for an implied warranty "does not mean the alleged defect must preclude any use of the product itself." *Electra Cruises, Inc. v. Camping World RV Sales*, Case No.11CV1798 AJB (DHB), 2013 WL 5775333, at *4 (S.D. Cal. Oct. 25, 2013). "[Defendant's] attempt to define a vehicle as unfit only if it does not provide transportation is an unjustified dilution of the implied warranty of merchantability." *Isip v. Mercedes-Benz USA, LLC*,

155 Cal. App. 4th 19, 27 (2007). For example, "[a] vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Id*. A printer that surreptitiously uses color ink even when printing in black and white, and that is wholly inoperable while any of its ink cartridges are empty – regardless of whether the depleted color is needed for the print job – is not fit for the ordinary purpose of printing. HP's caselaw does not change this outcome. For example, in *Birdsong* (MTD 13), the plaintiffs "make no allegations of any history of malfunction, but merely suggest possible changes to the [product] which they believe would make the product safer[.]" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (holding that plaintiffs "do not allege the iPods failed to do anything they were designed to do[.]"). Because Plaintiff has alleged that the Printers are unable to perform the most basic functions they are designed for (printing), Plaintiff has adequately demonstrated that the Printers are not fit for their ordinary purpose.

## I.     Plaintiff Has Adequately Pled Her Quasi-Contract Claim

Because Plaintiff has pointed to actionable omissions by HP, the MTD should be denied with respect to the quasi-contract claim. Plaintiff has demonstrated that HP omitted material information regarding the Printers' use of color ink and inability to print if any cartridge is empty to induce consumers to buy the printers, and thereafter to buy more color ink. FAC ¶ 114. As such, HP has received a benefit (increased color ink sales) and has unjustly retained that benefit at the expense of Plaintiff and the class, supporting a claim for quasi-contract. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) ("[T]he elements for a claim of unjust enrichment [are] receipt of a benefit and unjust retention of the benefit at the expense of another."); *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL 2125004 at *9 (N.D. Cal. May 6, 2015) (allegations that the defendant enticed the plaintiff to purchase products through misleading labels stated a claim for quasi-contract).

HP also asserts in a footnote that Plaintiff's quasi-contract claim should be dismissed because Plaintiff has adequate remedies at law, including her other claims in her FAC. MTD 14 n.6. This argument is similarly without merit. "That the claim may be duplicative of [p]laintiff's statutory claims under the UCL, FAL, and CLRA is not a proper ground for dismissal at this stage of the litigation[.]" *Romero*, 2015 WL 2125004, at *9 (holding that Fed. R. Civ. P. 8(d)(2) permits pleading in the alternative). Thus, Plaintiff has adequately stated a claim for unjust enrichment.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1

**J.      Plaintiff Has Standing to Seek Injunctive Relief**

2

HP argues that Plaintiff does not have standing to seek injunctive relief because she is now

3

aware of the Design Limitations and cannot be deceived in the future. HP misses the mark. In

4

*Davidson* (MTD 14-15), the Ninth Circuit held that a plaintiff has standing to seek injunctive relief,

5

despite knowledge of past false advertising, because the plaintiff "might purchase the product in the

6

future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but

7

incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956,

8

969-70 (9th Cir. 2017) (rejecting argument that prior knowledge of false advertising prohibits

9

standing, holding that "[k]nowledge that the advertisement or label was false in the past does not

10

equate to knowledge that it will remain false in the future."). The same applies here. Without a proper

11

disclosure, Plaintiff has no way of knowing whether the Printers still carry the Design Limitations.

12

Defendant tries to distinguish *Davidson* by arguing that the Design Limitations are disclosed

13

on its webpages, which prevents future confusion. The holding of *Davidson*, however, precludes

14

requiring consumers to investigate product labels, let alone obscure webpages, for clarifying

15

information. *Prescott v. Bayer HealthCare LLC*, No. 20-CV-00102-NC, 2020 WL 4430958, at *6

16

(N.D. Cal. July 31, 2020) (relying on *Davidson*, holding that "it is not clear why the burden to avoid

17

future misunderstanding lies with Plaintiffs and not Defendants when it is Defendants' actions that

18

are allegedly unlawful. After all, if the ability to fully review a product label automatically defeats

19

standing for injunctive relief, it is difficult to imagine any mislabeling and formulation case where

20

injunctive relief would be appropriate."). Regardless, for the reasons described above, consumers

21

have no reason to look for these webpages; the webpages are hidden in various customer support

22

pages which HP fails to explain how a customer can even find; and the information downplays the

23

Design Limitations. Thus, Plaintiff has standing under *Davidson* to bring her claims for injunctive

24

relief.

25

**VI.      CONCLUSION**

26

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's

27

MTD in its entirety.

28

Dated: September 28, 2020                                    **FARUQI & FARUQI, LLP**

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Benjamin Heikali*
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: 424.256.2884
Fax: 424.256.2885
E-mail:   bheikali@faruqilaw.com
                jnassir@faruqilaw.com

Bonner C. Walsh (*pro hac vice*)
**WALSH P.L.L.C.**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

*Attorneys for Plaintiff Christina Rose*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT