UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ROSE,<br><br>        Plaintiff,<br><br>    v.<br><br>HP INC.,<br><br>        Defendant. | Case No. 20-cv-02450-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 40 |

HP's motion to dismiss the fraud claims is denied because Rose has adequately alleged a duty to disclose, concealment of a material fact, and intent to defraud. The motion to dismiss the implied warranty claims is granted because Rose has not plausibly alleged that the printer is unfit for ordinary use. HP's motion to dismiss Rose's claim for injunctive relief is denied because she has adequately alleged standing to seek it at this stage.

<u>Fraud Claims</u>: A defendant has exclusive knowledge giving rise to a duty to disclose when, according to the complaint, the defendant "knew of th[e] defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011), *as modified* (Dec. 28, 2011). That is exactly what the complaint alleges. HP clearly knew about "underprinting" and the printer's inability to print when color ink is depleted, while Rose did not. And, according to Rose, it was hard to discover these design limitations, given the inconspicuous placement of relevant information on HP's website and online user manual.

HP's principal argument is that Rose cannot plead exclusive knowledge because information regarding these design limitations was publicly available. The complaint does

suggest "that prospective purchasers, with access to the Internet, could have read the [information] about" the design defects. *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007). But HP's argument belies *Collins*'s text, which only requires that a defect is "difficult"—not impossible— to discover. *Collins*, 202 Cal. App. 4th at 256. Further, "[m]any customers would not have performed an Internet search before beginning a [printer] search. Nor were they required to do so." *Falk*, 496 F. Supp. 2d at 1097. Customers also cannot "be expected to seek facts which they h[ave] no way of knowing exist[ ]." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices & Products Liability Litigation*, 754 F. Supp. 2d 1208, 1227-28 (C.D. Cal. 2010); *Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014).[1]

Viewed together, Rose's allegations are also sufficient to raise a plausible inference that HP concealed a material fact and intended to defraud consumers. Rose claims that HP was aware of "similar allegations regarding underprinting" as early as 2006, when consumers brought a class action suit against HP, alleging deceptive marketing and sales practices. That lawsuit resulted in a settlement, in which HP agreed to disclose information on underprinting on its website or in its user manuals. Nevertheless, to the extent that HP made these disclosures, the complaint suggests that HP essentially hid the information in places that reasonable consumers would be hard-pressed to find when purchasing a printer, and that it did so to avoid losing profits. *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013); *Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at *11 (N.D. Cal. Feb. 5, 2014). These allegations are sufficient for inferring concealment and intent.

Nor is HP correct that Rose failed to plead materiality. A non-disclosed fact is material "if the omitted information would cause a reasonable consumer to behave differently if he or she

---

[1] Some district court rulings could be interpreted as suggesting that whenever material information could be found in some corner of the vast public domain, there can be no exclusive knowledge. *See, e.g.*, *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013); *Wolph v. Acer America Corp.*, 2009 WL 2969467, at *4 (N.D. Cal. Sept. 14, 2009); *Stickrath v. Globalstar, Inc.*, 2008 WL 344209, at *4 (N.D. Cal. Feb. 6, 2008). As discussed above, however, California law—as interpreted by California's own courts—does not appear to go this far.

were aware of it." *See, e.g.*, *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993). Rose does not merely claim that she herself would have acted differently by not purchasing or paying less for the printer had she known about underprinting and the printer's inability to print in black and white without a colored ink cartridge. She also alleges that HP's omissions were "the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions."

      Implied Warranty Claims: In contrast, Rose has failed to state an implied warranty claim. A product's implied warranty merely guarantees "a minimum level of quality." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995)). Accordingly, the warranty "does not impose a general requirement that goods precisely fulfill the expectation of the buyer." *American Suzuki*, 37 Cal. App. 4th at 1296. A breach occurs "if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Birdsong*, 590 F.3d at 958. (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)). This standard generally requires more than a defect causing inconvenience. Rather, the defect must be fundamental. *Tomek v. Apple, Inc.*, 2012 WL 2857035, at *7 (E.D. Cal. July 11, 2012); *Kent v. Hewlett–Packard Co.*, 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010); *In re Carrier*, 78 F. Supp. 3d 1051, 1108 (N.D. Cal. 2015). Rose has failed to allege that the design limitations rise to this level. Indeed, she admits that the product prints in black and white, does not dispute that it can print in color as well, and makes no allegations regarding the quality of printouts. What she must deal with is better understood as an inconvenience from her printer's design—albeit a potentially expensive one. *See In re Google Phone Litigation*, 2012 WL 3155571, at *5 (N.D. Cal. Aug. 2, 2012).[2]

---

[2] Rose's attempts to recast the ordinary purpose of her printer are unconvincing. The complaint alleges that HP provided an implied warranty that "the Printers would continue to print black and white images and text as long as the printer contains black ink" and that "the Printers will use only black ink when printing black and white text and images." But these expectations are too precise. *See Rossi v. Whirlpool Corp.*, 2013 WL 5781673, at *7 (E.D. Cal. Oct. 25, 2013). Indeed, in Rose's opposition brief, she seems to acknowledge that the printers' ordinary purpose requires that they "perform the most basic functions they are designed for (printing) . . . ."

Rose has not identified how she could bolster her implied warranty allegations, nor can the Court conceive of a way she could state a claim. Thus, dismissal is without leave to amend. If discovery on the claims that are moving forward reveals evidence in support of this claim, Rose may seek leave to amend at that time.

Standing for Injunctive Relief: Although it's possible that the evidence will not support injunctive relief, Rose has adequately alleged standing to seek it at this stage. *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 969-70 (9th Cir.), *cert. denied*, 139 S. Ct. 640 (2018).

\* \* \*

A case management conference is scheduled for January 12, 2021, with an updated case management statement due no less than 7 days prior.

**IT IS SO ORDERED.**

Dated: December 29, 2020

_____
VINCE CHHABRIA
United States District Judge