Benjamin Heikali (SBN 307466)
E-mail: bheikali@faruqilaw.com
Joshua Nassir (SBN 318344)
E-mail: jnassir@faruqilaw.com
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

Bonner C. Walsh (*pro hac vice*)
**WALSH P.L.L.C.**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CEPELAK, JUDY CHAMBERS, JIM DICKINSON and MARCIA NUPP, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HP INC.,<br><br>Defendant. | Case No.: 3:20-cv-02450-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date: October 7, 2021<br>Time: 2:00 p.m.<br>Courtroom: 04, 17th Floor<br>Judge: Hon. Vince Chhabria<br><br>SAC filed: July 12, 2021 |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 1

III. LEGAL STANDARD ....................................................................................................... 2

IV. ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3)) ........................................... 3

V. ARGUMENT .................................................................................................................... 3

    A. Plaintiffs Have Sufficiently Pled Their Fraud-Based Claims ..................................... 3

        1. HP Waived Its Fraud-Based Arguments ............................................................ 3

        2. The Printers' Design Limitations Relate To The Printers' Central Functionality: Printing .................................................................................. 5

    B. Plaintiffs State a Claim Under the Arkansas Deceptive Trade Practices Act .............. 8

    C. Absent An Injunction, Plaintiffs Lack An Adequate Remedy At Law ...................... 10

VI. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                               **Page(s)**

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................................................................... 7

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ........................................................................................... 8

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) .................................... 4

*In re Auto. Parts Antitrust Litig.*,
  No. 12-md-02311, 2014 WL 3687035 (E.D. Mich. July 23, 2014) ............................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................................... 3

*David v. Baker*,
  129 F. App'x 358 (9th Cir. 2005) .................................................................................................. 2

*Estakhrian v. Obenstine*,
  233 F. Supp. 3d 824 (C.D. Cal. 2017) ......................................................................................... 11

*Evans v. DSW, Inc.*,
  No. CV 16–3791 JGB (SPx), 2017 WL 7058232 (C.D. Cal. Sept. 14, 2017) ............................ 10

*Green v. ADT, LLC*,
  No. 16-cv-02227-LB, 2016 WL 5339800 (N.D. Cal. Sept. 23, 2016) .......................................... 4

*Heredia v. Sunrise Senior Living LLC*,
  No. 8:18-cv-01974-JLS-JDE, 2021 WL 819159 (C.D. Cal. Feb. 10, 2021) ............................... 10

*Herron v. Best Buy Stores, LP*,
  No. 12-cv-02103-GEB-JFM, 2013 WL 4432019 (E.D. Cal. Aug. 16, 2013) ............................... 5

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ................................................................................................ *passim*

*Knowles v. Arris Int'l PLC*,
  No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019) ..................................... 7

*Luong v. Subaru of Am., Inc.*,
  No. 17-cv-03160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018) ....................................... 11

*In re: MacBook Keyboard Litigation*,
  No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................................... 11

*Nava v. Kobe Steel, Ltd.*,
    No. 18-cv-01423-VC, 2019 WL 4729540 (N.D. Cal. July 18, 2019) ........................................ 7, 8

*Norcia v. Samsung Telecommunications America, LLC*,
    No. 14-cv-00582-JD, 2018 WL 4772302 (N.D. Cal. Oct. 1, 2018) .............................................. 7

*Pinon v. Daimler AG*,
    No. 1:18-CV-3984-MHC, 2019 WL 11648560 (N.D. Ga. Nov. 4, 2019) ..................................... 9

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ....................................................................................................... 2

*Skalla v. Canepari*,
    430 S.W.3d 72 (Ark. 2013) .......................................................................................................... 9

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................................................................... 10

*Stemcell Techs. Canada Inc. v. StemExpress, LLC*,
    No. 21-cv-01594-VC, 2021 WL 3087668 (N.D. Cal. July 22, 2021) .......................................... 4

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*,
    No. 2:17-cv-00035-VAP-KSx, 2020 WL 1289549 (C.D. Cal. Mar. 3, 2020) .............................. 8

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ......................................................................................................... 2

*Victorino v. FCA US LLC*,
    No. 16cv1617-GPC(JLB), 2018 WL 2455432 (S.D. Cal. June 1, 2018) ................................... 11

*Wallis v. Ford Motor Co.*,
    208 S.W.3d 153 (Ark. 2005) ............................................................................................ 8, 9, 10

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ....................................................................................................... 3

*Zeiger v. WellPet LLC*,
    No. 3:17-cv-04056-WHO, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ................................... 10

**Other Authorities**

Fed. R. Civ. P. 12(g)(2) ........................................................................................................................ 3

## I. INTRODUCTION

The heart of this litigation lies in Defendant HP Inc. ("HP")'s decision to design its Printers to covertly consume and deplete color ink even while printing jobs in black and white only ("underprinting"), causing the Printers to cease functioning until the exorbitantly priced color cartridges are replaced (together, the "Design Defects"). Thus, once a color cartridge is depleted (which occurs at an accelerated rate), users cannot access the Printers' black ink. It is locked away by HP, rendering the Printers, and the remaining ink inside of them, useless. Thus, even when there is adequate black ink remaining in the Printers, Plaintiffs and other consumers frequently find their Printers in a non-functioning state. Critically, HP does not dispute these facts.

Instead, HP's primary argument is that Plaintiffs cannot maintain their fraud-based claims because these Design Defects do not affect the central functionality of the Printers, as they do not render the Printers "incapable of use." This is because customers can regain use of the printer and access to the black ink HP has locked away by expending additional money on color cartridges. This argument is a stretch. The Design Defects render the Printer unusable despite adequate black ink remaining in the Printer. In essence, HP asks the Court for immunity against fraud-based omission claims to allow businesses to install what is essentially ransomware, purposefully converting a product with valuable, usable contents into a paperweight until consumers shell out more money. This is not what consumers have bargained for. Despite HP's pleas to the contrary, this is not a matter of preference, but functionality. HP's additional arguments are equally unavailing for reasons discussed below. As such, HP's motion to dismiss should be denied.

## II. STATEMENT OF FACTS

As more fully discussed in Plaintiffs' Second Amended Class Action Complaint (ECF No. 69) ("SAC") and the Opposition to Defendant's initial Motion to Dismiss (ECF No. 41) ("Opp."), the printers at issue in the case ("Printers", *see* SAC ¶ 29) have been purposefully engineered by HP with the Design Defects, whereby the Printers surreptitiously use color ink for black-and-white print jobs and cease functioning once any of the color cartridges are empty. SAC ¶¶ 3, 14, 16, 18, 20, 31-33; Opp. at 1-2.

Given that Plaintiffs explicitly alleged the details of the Design Defects, including how and why the Printers are rendered incapable of use by these limitations, HP's factual contention that "Plaintiffs do not allege" that the Printers failed to print, or "that their printers malfunctioned in any way" is baldly contradicted by the plain allegations in the SAC. *See* HP's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (ECF No. 70) ("Motion" or "Mot.") at 2; SAC ¶¶ 14, 16, 18, 20. Given the underprinting allegations, *id.*, HP's contention that Plaintiffs did not "allege that they did not receive the amount of ink […] they were promised" is also false. Mot. at 2. By furtively accelerating the expenditure of the color ink Plaintiffs purchased, and by locking away the available black ink in the Printers, HP has caused Plaintiffs to receive less ink than promised.

HP also seeks the Court to take notice of its own webpages, specifically as to Printers' ink usage and the printer guide for one of the Printers in this Action, *see* ECF No. 70-1, materials which were not cited in the SAC and were never alleged to have been reviewed by plaintiffs. These materials should not be noticed for the reasons outlined in Plaintiffs' Opposition to HP's Request for Judicial Notice. Regardless, this information is not pertinent to the arguments addressed herein, particularly considering that, as recognized in this Court's Order (ECF No. 46) (the "Order"), these facts are difficult to discover for the ordinary consumer. Order at 2 (finding that the allegations regarding HP's purported "disclosures" of the Design Defects, in that "HP essentially hid the information in places that reasonable consumers would be hard-pressed to find when purchasing a printer" were "sufficient for inferring concealment and intent.")

### III. LEGAL STANDARD

On a motion to dismiss, it is the defendant's burden to show that the plaintiff cannot state a claim for relief. *David v. Baker*, 129 F. App'x 358, 360 (9th Cir. 2005). In evaluating a motion to dismiss, all factual uncertainties in the complaint should be construed in the light most favorable to the plaintiff. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). Further, the Court should "draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). To survive a motion to dismiss, plaintiffs must only allege enough facts to "raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Dismissal is proper only if the Court finds beyond doubt that Plaintiff can prove no set of facts which would entitle her to relief. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

### IV. ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))

The issues to be decided are as follows: (1) whether HP waived its arguments related to Plaintiffs' fraud-based claims by failing to raise them in its earlier motion to dismiss the First Amended Class Action Complaint; (2) whether the Printers' Design Defects, which caused the Printers to cease printing, relate to the central functionality of the Printers; (3) whether Plaintiff Chambers expending money on additional ink cartridges, and the malfunctioning of the Printers, constitute a harm under the Arkansas Deceptive Trade Practices Act; and (4) whether, absent an injunction, money damages serve as an adequate remedy of law for future purchases of the defective Printers.

### V. ARGUMENT

#### A. Plaintiffs Have Sufficiently Pled Their Fraud-Based Claims

##### 1. HP Waived Its Fraud-Based Arguments

HP's central argument in its Motion is that "Plaintiffs' fraud claims under California law […] and their common-law fraud and fraudulent concealments claims, should be dismissed because Plaintiffs fail to plausibly allege a defect with their printers that is 'central to the product's function.'" Mot. at 6 (citing *Hodsdon v. Mars, Inc.,* 891 F.3d 857, 864 (9th Cir. 2018)). While HP is incorrect that the Printers' Design Defects are not central to the product's functioning (addressed *infra*), as an initial matter, the Federal Rules bar HP from attempting to make an argument it failed to bring in its initial motion to dismiss. Fed. R. Civ. P. 12(g)(2) (establishing that a "party that makes a motion under this rule must not make another motion under this rule raising a defense or objection *that was available to the party but omitted from its earlier motion*.") (emphasis added).

HP argues that Plaintiffs' allegations do not constitute a defect under *Hodsdon*'s central functionality standard because "Plaintiffs' allegations establish […] that their printers functioned

3

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT

perfectly normally, even with the alleged 'underprinting' defect" given that "Plaintiffs allege that they used their printers to 'print[] images and text in black and white" and "that they were able to purchase replacement cartridges to 'continue printing in black ink.'" Mot. at 7 (citing SAC ¶¶ 14, 16, 18, 20). However, HP was aware of these allegations, which are at the heart of this litigation, from the onset of this Action. Indeed, these allegations were explicitly present from the initial complaint filed on April 10, 2020 (ECF No. 1) ("Compl.") Compl. ¶¶ 3, 6 (alleging HP's "fail[ure] to disclose that the Printers use substantial amounts of color ink when printing images and text in black and white (a process known as underprinting)" and that consumers "are forced to buy color ink in order to continue printing" once the color cartridges are depleted.) These facts were also explicitly plead in the First Amended Complaint (ECF No. 34) ("FAC") FAC ¶¶ 3, 6 (same). Given that the Ninth Circuit issued its decision in *Hodsdon*, the central authority HP relies on in its Mot., well before the inception of this Action, HP should have been aware of the authority and raised the argument in its initial motion to dismiss. It failed to do so.

Courts in this Circuit, including this Court, have consistently recognized that, under Rule 12(g), parties cannot raise arguments they neglected to make in prior motions to dismiss, as HP attempts to do here. For example, in *Stemcell Technologies*, this Court recently prohibited a party from making an argument that was available to it in an earlier motion but it neglected to make. *Stemcell Techs. Canada Inc. v. StemExpress, LLC*, No. 21-cv-01594-VC, 2021 WL 3087668, at *2 (N.D. Cal. July 22, 2021) (Chhabria, J.) (refusing to consider argument which "defendants failed to raise [] in their initial motion to dismiss", holding that because "[t]his argument was [] available to the defendants in their earlier motion, [] they have forfeited the right to raise it now.") Other California district courts are in agreement. *See*, *e.g.*, *Green v. ADT, LLC*, No. 16-cv-02227-LB, 2016 WL 5339800, at *6 (N.D. Cal. Sept. 23, 2016) ("[U]nder Rule 12(g) and (h), courts in this district have precluded defendants from raising previously available but unmade arguments in motions to dismiss after a complaint is amended."); *see also In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *44 (N.D. Cal. May 27, 2016) ("Here, Defendants have asserted, for the first time, an ERISA preemption defense as to Plaintiffs' UCL claim, which Defendants did not assert

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT

in their first round motions to dismiss. […] Defendants have asserted this defense in a second round motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants are foreclosed from doing so because of Rule 12(g)(2) and Rule 12(h)(2)."); *Herron v. Best Buy Stores, LP*, No. 12-cv-02103-GEB-JFM, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013) (prohibiting new argument in renewed motion to dismiss under Rule 12(g) when the defendant "failed to squarely raise this argument in its initial dismissal motion, even though the argument was available to [defendant] when it originally sought to dismiss Plaintiff's complaint.") (citing *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n. 2 (9th Cir.1988)).

HP was aware of the allegations it relies on for its argument that the Design Defects do not relate to the central functionality of the Printers from the initial complaint under *Hodsdon*. It could have raised this argument when it originally sought to dismiss Plaintiff's complaint, but failed to do so. Because HP asserts this argument for the first time now, it has waived its *Hodsdon* argument and the Court should not consider it.

### 2. The Printers' Design Limitations Relate To The Printers' Central Functionality: Printing

Even if the Court considers HP's belated argument, it is without merit. HP purposefully designed the Printers to expend color ink when users print only in black-and-white, and then cut off users' access to their black ink once their color ink is depleted. To be clear, this means that the Printers can no longer print (even in black-and-white despite available black ink) when the color ink is depleted. HP admits that Plaintiffs alleged that these design limitations pertain to the Printers' "central functionality", but dispute that they are defects under *Hodsdon* because they purportedly do not cause the product to "malfunction" or become "incapable of use." Mot. at 8 (citing SAC ¶¶ 72, 97, 110).

First and foremost, HP incorrectly asserts that the Design Defects do not cause the Printers to become "incapable of use" or "malfunction." *Id.* Plaintiffs explicitly allege that because of the defects, the Printers covertly deplete color ink and prematurely cut of all access to the Printers, rendering users incapable of using their printers and the black ink contained within them to print black-and-white images, even if their Printers have plenty of black ink remaining. SAC ¶ 32. HP does not deny that

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

there is sufficient black ink to print black-and-white images in users' Printers once this cut-off limitation is triggered. Neither does HP dispute that these design limitations are "physical and important to the product's function" or "related to the [Printers'] function as [a printer]," as is discussed by the Ninth Circuit in *Hodsdon*. *Hodsdon*, 891 F.3d at 864. It is difficult to argue that secret use of additional ink, and not being able to print at all, does not relate to a printer's core function.

Instead, HP argues that the Design Defects do not pertain to the Printers' "central functionality" because the Printers are nonetheless still "[]capable of use" if users decide to spend additional money on color ink to regain access to the black ink HP locked away. Mot. at 7. Critically, while HP cites to *Hodsdon* to argue that the Ninth Circuit requires the defect in question to render the product "incapable of use," the Ninth Circuit did not hold as such. Rather, the Ninth Circuit used the phrase *once* in an analogy of a defect that *could* relate to a product's central functionality: "A computer chip that corrupts the hard drive, or a laptop screen that goes dark, renders those products incapable of use by any consumer; some consumers of chocolate are not concerned about the labor practices used to manufacture the product." *Hodsdon*, 891 F.3d at 864. The Court was simply comparing a component of the product that does not relate to its function (slave labor in chocolate) to a scenario related to the product's use, using an example where the product is no longer of use. Rather, the Ninth Circuit was clear in its wording, holding that a plaintiff need only allege that the concealed defect is related to the product's central functionality. *Id.* ("Plaintiff fails to allege that the existence of slave or child labor in the supply chain *affects the product's central function*. In *Collins* and *Rutledge*, the plaintiffs were required to plead that the allegedly concealed physical defect was *central to the product's function*.") (emphasis added).

Regardless, even if the Court interprets *Hodsdon* as HP does, the Design Defects render the Printers completely unusable. Users cannot print despite adequate black ink remaining in the Printers. The black ink is present in the Printers' cartridges, but cannot be accessed and the printer is completely unusable. HP attempts to circumvent this allegation by claiming that its customers can regain access by purchasing additional, unneeded, more expensive, *color* ink. HP does not deny that

there is adequate black ink remaining in the Printers, or that HP locks users away from accessing this ink or using their Printers until color ink is purchased. For these reasons, while a few of HP's authorities (i.e., *Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *16 (N.D. Cal. Aug. 20, 2019) and *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 550 (N.D. Cal. 2019)) interpret *Hodsdon* to require the defect to render the product unusable, these authorities are of no consequence. If users do not decide to acquiesce to HP unnecessary holding their printers and black ink hostage behind a paywall. HP's argument is akin to a situation where a manufacturer sells software with concealed ransomware, intermittently rendering user's computer inoperable until the customer pays additional money to regain access. It does not matter that the user can regain access to their rightful belongings with an additional payment, or even that users may gain an additional item when paying the ransom. It does not take away from the fact that the manufacturer rendered the item, and its contents that were rightfully purchased, inoperable until it received its ransom. Even if not a single color print job is done, these cartridges become depleted, and without further payment to HP the printer cannot be used regardless of how much black ink remains.

HP does not, and cannot, point to a single authority where a defect which renders a product functionless is not considered "incapable of use" when users are required to spend *additional* money in order to use the product. Rather, HP's remaining authorities require even less disruption with the product's central functionality, such as requiring the plaintiff to "alleg[e] any sort of malfunction or other negative effect." *See e.g., Nava v. Kobe Steel, Ltd.*, No. 18-cv-01423-VC, 2019 WL 4729540, at *1 (N.D. Cal. July 18, 2019). Being unable to use the black ink that is available in your Printer is undoubtedly a negative effect. Because the Design Defects have rendered the Printers inoperable and held what should have been usable black ink hostage behind a paywall, the Printers have malfunctioned (i.e., failed to functional normally).

Regardless, numerous courts in this District have echoed *Hodsdon*'s plainly worded holding to only require the alleged omitted defect to only *relate* to the central functionality of the product, not that the product be rendered completely inoperable. Here, the central functionality of a printer is its ability to print. For example, in *Norcia v. Samsung Telecommunications America, LLC*, No. 14-cv-

7

00582-JD, 2018 WL 4772302, at *1 (N.D. Cal. Oct. 1, 2018), which concerned "omissions relating to the Galaxy S4 smartphone's speed and performance", the court found that "[n]o reasonable person could disagree that 'speed and performance' go to the heart of a smartphone's central function." The defect need not have rendered the smartphones incapable of use. A reduction in their ability to perform their ordinary functions as a smartphone were sufficient. And in *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1017 (N.D. Cal. 2020), the court found that the alleged omissions regarding a smartphone antenna being "less capable when it comes to establishing and maintaining cellular and wireless internet connections" were "central to the product's function." The phones and antennas were still operable, the antennas just provided "inferior cellular or wireless connectivity." *Id.* at 1016; *see also Stockinger v. Toyota Motor Sales*, *U.S.A., Inc.*, No. 2:17-cv-00035-VAP-KSx, 2020 WL 1289549, at *7 (C.D. Cal. Mar. 3, 2020) ("[W]hether HVAC odor undermines the central function of Class Vehicles is a triable question of fact."). Thus, while the Printers' Design Defects intermittently render the Printers incapable of use, Plaintiffs need only demonstrate that the defects relate to the Printers' central functionality. Clearly, concealing the Printers' use of color ink in black-and-white print jobs and eliminating users' access to their Printers and the contained black ink once their color ink is depleted, relate to the Printers' functionality as a printer. For these reasons, Plaintiffs have adequately plead their fraud-based claims.

**B.   Plaintiffs State a Claim Under the Arkansas Deceptive Trade Practices Act**

HP argues that Plaintiffs' claims under the Arkansas Deceptive Trade Practices Act ("ADTPA") should be dismissed because "Plaintiffs seek damages for the alleged diminution in the value of their printers, which are not cognizable under the ADTPA." Mot. at 10. HP relies on *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005) to argue "the Arkansas Supreme Court held that where 'the only alleged injury is the diminution in value of the product,' such injury does not rise to the level of 'actual damage or injury' for purposes of the ADTPA." *Id.* But HP has misrepresented Plaintiffs' allegations.

Plaintiff Judy Chambers, who asserts the ADTPA cause of action, specifically alleges *actual monetary loss* when alleging that, because of the Printers' Design Defects, she has had to purchase

color ink replacement cartridges "approximately 7-8 times, in order to continue printing in black ink." SAC ¶ 16. These additional purchases of ink cartridges, which were caused by the Design Defects, are a separate and independent form of actual monetary loss which supports a claim for the Arkansas DTPA. This is a separate harm than suffered from the purchase of her Printer.

Further, Ms. Chambers has specifically alleged the precise injury described in *Wallis*, where the Arkansas Supreme Court stated that under the Arkansas DTPA, "actual damage or injury is sustained when the product has ***actually malfunctioned*** or the defect has manifested itself." *Wallis*, 208 S.W.3d at 161 (emphasis added); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2014 WL 3687035, at *3 (E.D. Mich. July 23, 2014) ("[T]he plaintiff in *Wallis* merely alleged that the defendant manufacturer of the plaintiff's vehicle *concealed a design defect*, causing the plaintiff to *pay more for the vehicle that its actual value.*"). Here, Ms. Chambers alleged that the Printers *actually malfunctioned*. SAC ¶ 16 (alleging that her Printers' "color ink supply depleted on numerous occasions" without her knowledge, and that the Printers then "no longer allowed Ms. Chambers to print, even when attempting to print images or text solely in black and white.") Thus, the two injuries suffered by Ms. Chambers (expending additional money on color ink and paying more for the Printers than their actual value based on the concealed Design Defects), constitute actual injuries under the ADTPA. *Wallis*, therefore, does not preclude her claims under the ADTPA.

Further, HP falsely equates statements that plaintiffs would not have purchased an item or would have paid less for it to diminution in value damages. Mot. at 10. However, these allegations pertain to *materiality*, not a diminution in value. A showing of materiality is a requirement under the ADTPA. *Skalla v. Canepari*, 430 S.W.3d 72, 82 (Ark. 2013). Indeed, courts have refused to dismiss ADTPA claims where the plaintiff has plead that she "had no reason to know or expect [the defect]" and that "had she known, she would not have bought [the product] or would have paid less for it." *Pinon v. Daimler AG*, No. 1:18-CV-3984-MHC, 2019 WL 11648560, at *3 (N.D. Ga. Nov. 4, 2019). Rather, diminution in value damages concern a decrease in the resale value of the item at issue. For example, "'[t]he Plaintiffs' assertions that their ABS-equipped vehicles are defective and that *they have suffered a loss in resale value* as a result of the defect is insufficient as a matter of law to plead

a claim under any theory the plaintiffs have advanced.'" *Wallis*, 208 S.W.3d at 156 (*quoting Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999)). Printers, unlike vehicles, are generally not purchased with the intent of resale. Plaintiffs here do not plead diminution in value damages.

HP's arguments urging the dismissal of Plaintiffs' ADTPA claims are thus inapposite on both the law and the facts, and the motion should be denied.

### C. Absent An Injunction, Plaintiffs Lack An Adequate Remedy At Law

Finally, HP argues that Plaintiffs fail to adequately allege that they lack an adequate remedy at law because "[t]here is no reason why money damages could not redress [their] alleged harms." Mot. at 13. HP misunderstands Plaintiffs' requested injunctive relief. It is not about returning money, it is about changing HP's deceptive conduct. SAC ¶ 21 ("[A]bsent an injunction, [Plaintiffs] will be unable to rely with confidence on whether the Printers require color ink to print images and text in black and white or whether the Printers are capable of printing black images or text when the color ink is depleted.")

This distinction is precisely what makes HP's primary authority in support of its argument, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), inapposite. (finding that the plaintiff had an adequate remedy of law when she "concede[d] that she seeks the same sum in equitable restitution as her "requested in damages[.]"); *Zeiger v. WellPet LLC*, No. 3:17-cv-04056-WHO, 2021 WL 756109, at *21 (N.D. Cal. Feb. 26, 2021) ("Assuming that *Sonner* applies to injunctive relief, Zeiger has shown that monetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at. Zeiger's remedy at law, *damages, is retrospective. An injunction is prospective*. Damages would compensate Zeiger for his past purchases. An injunction would ensure that he (and other consumers) can rely on WellPet's representations in the future.") (emphasis added); *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS-JDE, 2021 WL 819159, at *8 (C.D. Cal. Feb. 10, 2021) (holding *Sonner* does not preclude the plaintiffs from seeking an injunction prohibiting the alleged unlawful conduct because plaintiffs alleged a continuing risk of harm the class and the public); *Evans v. DSW, Inc.*, No. CV 16–3791 JGB (SPx), 2017 WL 7058232, at *6 (C.D. Cal. Sept. 14, 2017) (plaintiff's allegations

10
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT

seeking to cease defendant's continuing deceptive conduct are "sufficient to allege that a damages remedy is inadequate.").

HP's additional authorities do not change this result. For example, in *In re: MacBook Keyboard Litigation*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020), the proposed injunctive relief was retrospective, focusing on "repair or replacement." Here, the injunctive relief is prospective, looking to conspicuous disclosures regarding the Printers' design limitations for future purchasers. And in *Victorino v. FCA US LLC*, No. 16cv1617-GPC(JLB), 2018 WL 2455432, at *20 (S.D. Cal. June 1, 2018), the court refused to certify an injunctive relief class when "[t]hose who purchased and then sold their vehicles would not get the benefit of the injunction." Here, all future purchasers of the Printers will get the benefit of an injunction as they will be put on notice of the Printers' design limitations, curing any deception caused by HP's current omissions.

Regardless, HP's arguments do not provide a valid basis for dismissal, as Plaintiffs have the right to plead claims in the alternative, so the availability of monetary damages does not preclude a claim for equitable relief. *Luong v. Subaru of Am., Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018) ("The availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct."); *Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017) ("plaintiffs may seek injunctive and/or restitutionary equitable relief separate and apart from the same underlying claims"). For these reasons, Plaintiffs' claims for injunctive relief are adequately plead.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety.

Dated: August 18, 2021

**FARUQI & FARUQI, LLP**

By: */s/ Benjamin Heikali*
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: 424.256.2884

Fax: 424.256.2885
E-mail: bheikali@faruqilaw.com
jnassir@faruqilaw.com

Bonner C. Walsh (*pro hac vice*)
**WALSH P.L.L.C.**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206

*Attorneys for Plaintiffs*