

NEW YORK      CALIFORNIA      DELAWARE      GEORGIA      PENNSYLVANIA

January 21, 2021

The Honorable Vince Chhabria
United States District Court
Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue, Courtroom 4 – 17th Floor
San Francisco, CA 94102

      RE:    *Cepelak, et. al. v. HP Inc.*, No. 3:20-cv-02450-VC

Dear Judge Chhabria,

      Pursuant to this Court's Standing Order, the parties seek a court order to resolve a discovery dispute regarding the production of Defendant HP Inc.'s ("HP") documents responding to Plaintiffs John Cepelak, Judy Chambers, Jim Dickinson, and Marcia Nupp's ("Plaintiffs", together with Defendant, the "Parties") First Set Of Requests For Production ("RFPs"), attached as **Exhibit A** to this letter.

      <u>**Plaintiffs' Position**</u>

      On January 11, 2022, this Court issued its Order Denying Request To Amend Case Schedule (Dkt. No. 86) ("Order"), declining to accept the Parties' request to continue the deadlines in this case by four months. Given this denial and the current time constraints set by the July 8, 2021 Order (Dkt. No. 67), Plaintiffs seek a court order requiring HP to produce all responsive documents by January 31, 2022. While Plaintiffs understand the Court's concern regarding the progress made in regard to discovery in this Action to date, Plaintiffs believe a timeline of their efforts to obtain this documentation is necessary to demonstrate why the Court should compel production of the documents sought by Plaintiffs' RFPs.

      Plaintiffs served their RFPs on July 29, 2021. Since that date, Plaintiffs have been continuously negotiating and communicating with Defendant in an effort to reach a mutually agreeable protective order and parameters of Defendant's document production without involving judicial intervention. First, on August 23, 2021, Plaintiffs followed up with HP regarding when Plaintiffs can expect HP to begin its document production, which resulted in HP producing its first and only set of documents on September 9, 2021, consisting of only 37 pages of documents. In order to push forward with additional document production, the Parties began working towards a mutually agreeable protective order and protocol and electronic document production. Specifically, on August 30, 2021, HP sent Plaintiffs a draft stipulated protective order ("Protective Order") and on October 8, 2021, Plaintiffs provided Defendant with a draft Electronic Stored Information Protocol ("ESI Protocol").

      Following the initial exchange of the ESI Protocol and Protective Order, the Parties repeatedly met and conferred to reach a mutual agreement on these protocols and HP's search, review, and

production of documents. On October 21, 2021, the Parties met and conferred and extensively discussed their respective positions and differences regarding the ESI Protocol and Protective Order, making additional progress towards a mutual resolution. On October 28, 2021, Defendant provided a revised ESI Protocol to Plaintiffs, which Plaintiffs accepted on November 9, 2021. And on November 2, 2021, Plaintiffs provided further modifications to the draft Protective Order and demanded that Defendant provide a reasonable estimate of when it expects to substantially complete its document production, which HP estimated to be January 28, 2022. HP explained that much of the difficulties in its document search and review were determining the printers at issue in this case (i.e., HP Printers that have one or more of the issues alleged in the operative complaint).

On November 11, 2021, the Parties met and conferred regarding HP's objections and responses to Plaintiffs' RFPs, and stepped closer to reaching an amicable resolution of their issues, reaching an agreement on nearly all of the RFPs. The last remaining obstacle before producing the documents was identifying the list of printers at issue in this case. The Parties met and conferred again on November 30, 2021 and December 8, 2021 to finalize the Protective Order and discuss the list of Printers at issue in this case so that HP can proceed with its document production. The call was fruitful, with the Parties reaching a mutual agreement on the Protective Order subject to HP's client approval. On December 10, 2021, HP determined that there are at least 55 printers at issue in this case and provided the list of these printers to Plaintiffs. On January 5, 2022, with these issues squared away, the Parties agreed to stipulate to a four-month extension given that the close non-expert fact discovery was on February 28, 2022 and that, without the benefit of documents, Plaintiffs would be unable to meet their expert disclosure deadline on January 10, 2022. Subsequently, the Parties filed their joint stipulation seeking a four-month extension of the deadlines in this case on January 7, 2022, which the Court denied in its Order on January 11, 2022.

Further, despite repeated requests for HP to confirm with its client that the proposed Protective Order was acceptable, Plaintiffs have not received any confirmation. Instead, HP now unilaterally seeks the Court to enter the "Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets," without modification, for use in this case. As the Northern District of California's website makes clear, HP's proposed protective order is located under the header for "Patent Cases." This is not a patent case. False advertising actions routinely involve sensitive business information, and the Northern District's standard protective order has served as an adequate shield for these documents. HP has failed to demonstrate what special circumstances warrant a deviation from the Northern District's Stipulated Protective Order for Standard Litigation. Thus, Plaintiffs request the Court reject HP's attempt to shoehorn in a protective order for patent cases, especially when it is done without a formal motion.

Lastly, on January 20, 2021 at 7:02 pm PST, HP provided Plaintiffs with an additional 4,207 pages of documents. While Plaintiffs are unable to fully review the documents given the timing of HP's production, it seems the documents are predominantly publicly available user manuals. This does not obviate the need for an order compelling HP's document production. HP has demonstrated that it will not substantially complete its document production in a timely manner without judicial intervention, and HP's last-minute production of publicly available user manuals reinforces this fact.

In short, Plaintiffs have earnestly pursued a mutual resolution of issues relating to discovery and the production of documents with HP, but given the Court's Order, Plaintiffs must press forward diligently with compelling document production in order to protect the interests of the putative classes. Plaintiffs have attempted to avoid involving the Court and believed the actions they took were in the best interest of the class, while being mindful of wasting judicial resources. *Brown v. Barnes*

*& Noble, Inc.*, 474 F. Supp. 3d 637, 644 (S.D.N.Y. 2019) ("[P]arties are expected to meet and confer about custodians of relevant ESI, date ranges for searches of ESI, and other search parameters.") (citing Fed. R. Civ. P. 1 and 26(f)). However, the current schedule demands judicial intervention. For these reasons, Plaintiffs demanded HP produce all responsive documents by January 31, 2022. HP has refused, so Plaintiffs now turn to the Court and respectfully request the Court to order HP to produce all non-privileged documents in its possession, custody, or control responsive to Plaintiffs' RFPs, regardless if there is a protective order in place. *Prime Focus Creative Servs. Canada, Inc. v. Legend3D, Inc.*, No. CV152340MWFPLAX, 2016 WL 6916816, at *3–4 (C.D. Cal. Apr. 11, 2016) (ordering defendant to produce all responsive documents, "whether or not a protective order has been issued" when determining that "the parties are actively attempting to agree to the terms of a protective order" and "the parties have apparently discussed a date for providing documents", but there have been significant delays in finalizing the protective order and defendant has refused to produce documents); *WayPoint Biomedical, Inc. v. Convenience Store Brokers, Inc.*, No. CV 07-8163-CAS(RCX), 2008 WL 11338018, at *2 (C.D. Cal. Dec. 12, 2008) (compelling party to "produce all responsive documents" "without a protective order" after months-long delay in producing documents); *Cahill v. GC Servs. Ltd. P'ship*, No. 17-CV-1308-GPC-MDD, 2018 WL 1831865, at *2 (S.D. Cal. Feb. 15, 2018) (compelling production when "it appears that the parties did confer but no motion for protective order was filed", holding "[t]t was not and is not an option for Defendant simply to withhold production.")

### Defendant's Position

HP has engaged in extensive, good-faith discussions with Plaintiffs and invested significant time moving this case forward over the past several months. Those efforts include the exchange of more than 60 emails, several rounds of written discovery requests and responses, meet-and-confer letters, the production of more than 4,200 additional pages of documents, and roughly a dozen telephone conferences with Plaintiffs' counsel. Outside counsel for HP alone have devoted more than 400 hours to the case since September 2021. Indeed, in December 2021, Plaintiffs represented in a stipulation to the Court that the parties were diligently engaged and would benefit from a proposed extension of 120 days to complete fact discovery. Now, ostensibly in response to the Court's admonition that "adequately representing a proposed class includes moving the case forward at a reasonable pace" (Dkt. 86), they claim the opposite and seek to blame HP.

While HP believes this case is advancing at an appropriate pace, any purported delay has been caused by two issues: (1) resolving Plaintiffs' inexhaustible objections the Court's model protective order; and (2) difficulty identifying relevant printers in this case based on the allegations in Plaintiffs' complaint, which is a necessary step to identifying relevant documents for production.

1. <u>Protective Order</u>: HP proposed the Northern District's "Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets" for use in this case on August 30, 2021. The Court's model orders were unanimously "approved by all judges of the Northern District," *Moore v. Trader Joe's Co.*, 2019 WL 914129, at *2–3 (N.D. Cal. Feb. 25, 2019), and set forth "presumptively reasonable conditions," *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, 2012 WL 1232105, at *2 & n.14 (N.D. Cal. Apr. 12, 2012).

Plaintiffs did not propose edits to the draft until *two months later* on November 2, 2021, and have since raised a host of constantly evolving objections and revisions that would strip HP of important protections and impose onerous and unnecessary burdens on HP. For instance:

- Plaintiffs objected to the use of "Highly Confidential" designations and to protections relating to experts' use of confidential information in the model order, even though their discovery requests ostensibly seek confidential engineering, design, and testing documents (RFP 4–18); internal communications (RFP 15, 18–20); confidential marketing, distribution, and sales figures (RFP 20, 31–33, 38–39); confidential customer lists (RFP 40); and business contracts (RFP 34). As HP informed Plaintiffs, the Court treats confidential business information relating to the marketing, sales, design, development, and production of proprietary technologies as both "highly sensitive confidential information" and "trade secrets." Consequently, the Court routinely rejects objections to the confidentiality designations in the "presumptively reasonable" model orders. *E.g.*, *Moore*, 2019 WL 914129, at *2–3; *Elec. Scripting Prod., Inc. v. HTC Am. Inc.*, 2020 WL 1151190, at *1–3 (N.D. Cal. Mar. 10, 2020); *Corley v. Google, Inc.*, 2016 WL 3421402, at *3–4 (N.D. Cal. June 22, 2016).

- Plaintiffs object to the use of the model order because this is not a "patent" case. Yet as HP has explained on at least three occasions, the Court has four model protective orders. One model is, indeed, exclusively for patent cases. *See* "Patent Local Rule 2-2 Interim Model Protective Order." HP has never proposed that order. Rather, HP proposed the "Model Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets." Plaintiffs ignore the "***and/or***" conjunction in the title, which indicates that the order is also intended for cases involving "highly sensitive confidential information" and/or "trade secrets." Plaintiffs have never disputed that discovery in this case involves highly sensitive information and/or trade secrets, or that this exact model order is routinely used in non-patent putative class actions. *See, e.g.*, *Moore*, 2019 WL 914129, at *2–3 (class action alleging false advertising); *Corley*, 2016 WL 3421402, at *3–4 (class action alleging privacy claims).

- Although Plaintiffs cannot articulate why they think source code would be relevant in this case, much less what *type* of source code might become the subject of discovery, Plaintiffs proposed an extraordinarily burdensome requirement that HP track down every conceivable type of source code related to a not-yet-defined class of printers, make multiple copies, and provide a copy in advance of any discovery request related to source code to Plaintiffs' counsel. The parties engaged in extensive meet-and-confer discussions on these issues and HP attempted to accommodate Plaintiffs' concerns in good faith, including by undertaking a time-consuming review of the repositories of relevant source code and circulating a reminder of the litigation hold specifically addressing source code. None of what Plaintiffs have requested is required by the model order, and Plaintiffs have never attempted to articulate why these departures would be reasonable or necessary.

The time for adopting a protective order is long overdue and these games must come to an end. HP has been prepared to sign the Court's model protective order since August 2021, but Plaintiffs *still* object to the model order, and continue to use objections and inquiries into matters outside the model language as a tool to stall discovery. Plaintiffs' request that the Court sanction *HP* by compelling immediate production with no protective order also runs contrary to controlling caselaw and would reward Plaintiffs' dilatory brinksmanship. Indeed, in all of the cases cited by Plaintiffs, courts imposed a model order (or ordered productions without an order) *on the party refusing or failing to agree to* a protective order. *Prime*, 2016 WL 6916816, at *2–3 (defendant produced no documents and refused the model protective order); *WayPoint,* 2008 WL 11338018, at *2–3; *Cahill* 2018 WL 1831865, at *1–2.

**Solution:**  HP requests that the Court issue an order adopting the "Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets," without modification, for use in this case.  *See* Fed. R. Civ. P. 26(c)(1) (authorizing such action); *e.g.*, *Elec. Scripting Prod.*, 2020 WL 1151190, at *1–3 (entering "model protective order without modification" over non-agreeing party's objections); *Moser v. Health Ins. Innovations*, 2018 WL 5617722, at *1–5 (S.D. Cal. Oct. 25, 2018) (same); *Corley*, 2016 WL 3421402, at *1–4 (same).

2. <u>Identifying Relevant Devices</u>:  HP served objections and responses to plaintiffs' RFPs on August 30, inviting plaintiffs to meet and confer on the scope of their requests.  Once again, Plaintiffs did not respond for *months* until November 2021—and only upon HP's insistence.  The parties agreed in meet-and-confer discussions that discovery would be limited to a list of relevant printers based on the allegations in Plaintiffs' operative complaint.  Plaintiffs state the "Printers challenged in [their] Complaint are all HP printers which [1] engage in underprinting and/or [2] do not allow consumers to continue printing in black and white when the Printers' color cartridges are depleted."  Dkt. 68 ¶ 29.  Development of the printer list was delayed by Plaintiffs' suggestion that they would amend their complaint—as the Court allowed on November 15, *see* Dkt. 79—in a way that would again change the scope of the case, but Plaintiffs ultimately declined to do so.  The parties did not have a static complaint to guide discovery until December 6, 2021.

In the meantime, after extensive discussions with Plaintiffs, and a factual investigation that included interviews with HP engineers and a review of relevant records, counsel determined that no HP printers sold during the earliest potential class period engaged in a process that Plaintiffs call "underprinting"—a copycat claim based on obsolete technology at issue in a case filed 16 years ago.  *See Rich v. Hewlett-Packard Co.*, No. C-06-03361-JF, (N.D. Cal.).  HP reported the results of its investigation to Plaintiffs in mid-December 2021.  HP also investigated the second category of printers identified in Plaintiffs' complaint, which is also imprecise and flawed.  The parties discussed this list further in teleconferences on December 10 and 17, 2021.

With development of the printer list ongoing, HP is moving forward with document productions.  On January 20, HP produced another 4,218 pages, many of which are non-public documents and all of which were requested by Plaintiffs in discovery.

3. <u>Production Timeline</u>:  Again, in December, Plaintiffs represented to the Court that the parties are diligently engaged and would benefit from 120 additional days to complete fact discovery.  Now, although they are well aware that HP could not possibly complete its document production in one week, they make the unreasonably one-sided demand that it do so by January 28 while also proposing a 10-week extension *of their own* fact discovery deadlines.  Their proposal is untenable, and they have been completely unwilling to compromise.

Further, the parties never agreed to a January 28 substantial completion target.  HP proposed that date months ago, but Plaintiffs objected that it was too close to the February 28 fact discovery cut-off.  The parties compromised by agreeing to seek an extension of the discovery cut-off that would allow HP to complete its document productions and allow Plaintiffs enough time to review those documents before a revised cut-off date.  January 28 has not come up since until Plaintiffs' spontaneously demanded that HP produce all documents by next week.

HP is diligently collecting responsive documents, as it has for months, but requires additional time to complete this process.  HP respectfully requests a 75-day (down from 120-day) extension of the fact discovery cut-off through May 16, 2022 to complete its productions.

Page 6
January 21, 2022

Sincerely,

Benjamin Heikali
Counsel for Plaintiffs

Samuel Liversidge
Counsel for Defendant HP Inc.